984 A.2d 405

**BOARD OF EDUCATION OF SOMERSET COUNTY**

v.

**SOMERSET ADVOCATES FOR EDUCATION.**

**No. 2587, Sept. Term 2008.**

Court of Special Appeals of Maryland.

Dec. 1, 2009.

386

P. Tyson Bennett (Carney, Kelehan, Bresler, Bennett & Scherr, LLP, of Annapolis, and Fulton P. Jeffers of Salisbury, on the brief), for appellant.

Joseph L. Beavers (Alicia N. Ritchie, Miles & Stockbridge, PC on the brief), Baltimore, for appellee.

Panel: DAVIS, WOODWARD and CHARLES E. MOYLAN, JR. (Retired, Specially Assigned), JJ.

DAVIS, J.

Appellant, the Board of Education of Somerset County (the Local Board), appeals from the judgment of the circuit court, reversing the decision of the Maryland State Board of Education (the MSBE) and remanding the case to the Local Board with directions to vacate its previous decision denying the application for a charter school submitted by appellee, Somerset Advocates for Education (SAFE). Appellant presents three questions[1] to this Court, which we have consolidated and rephrased as follows:

 I. Was the MSBE's review of the Local Board's decision arbitrary and capricious because it failed to reverse the Local Board's decision for its failure to provide appellee with the numerical rating tool used to evaluate appellee's charter school application?

 II. Did the MSBE abuse its discretion in failing to reverse the Local Board based upon appellee's allegations of bias?

---

**1.** Appellant presents this Court with the following issues:
 I. Whether the failure of the Local Board to provide SAFE with the numerical rating tool used to analyze SAFE's charter school application was fatal to the application evaluation process[.]
 II. Whether the State Board acted in an arbitrary, capricious or illegal manner in affirming the Local Board's decision to deny SAFE's charter school application[.]
 III. Whether any potential bias on the part of the Local Board had any impact on the State Board's decision to affirm the denial of SAFE's charter school application[.]

For the reasons that follow, we answer both questions in the negative. Accordingly, we reverse the decision of the circuit court.

## PROCEDURAL AND FACTUAL BACKGROUND

Appellee, SAFE, a corporation established for the purpose of creating and operating a charter school in Somerset County, Maryland, submitted an application to create a charter school to the Local Board on December 12, 2006, during a regular session public meeting of the Local Board. Appellee completed the application pursuant to the Public Charter School Guidance Materials published by Somerset County Public Schools (SCPS). The Charter School Review Committee (the Committee) initially reviewed appellee's application and determined that the application was "technically incomplete." The Committee created a ten-page document detailing the deficiencies in the application and requesting clarification in fifty areas, and provided it to appellee on January 12, 2007.

On March 12, 2007, appellee resubmitted its application. The amended application, according to the Committee, provided an "adequate response" to eight items, an "inadequate response" for twenty-nine items and thirteen items were deemed to require "group discussion." Between March 22, 2007 and April 3, 2007, the Committee met with appellee's representatives on four occasions to discuss the areas of concern, including the Instructional Program, Administrative Structure, Special Education, Personnel, Finances, Business Management, Transportation, Technology and Facilities.

The Committee, including the Superintendent, after reviewing the amended application and meeting with appellee's representatives, scored the amended application based upon an "analytical scoring rubric" that was developed by the Anne Arundel County Public Schools. The Local Board did not provide the numerical scoring tool to appellee until after the conclusion of the scoring process. Out of a maximum possible score of 530, appellee's application received a score of 189. A

score of 318 would have been sufficient to grant appellee's application.[2]

After holding the four meetings, the Committee prepared a detailed document, listing the strengths and weaknesses of the various aspects of the application. The Local Board held a special meeting on April 12, 2007 to review the Committee's findings after scoring. None of appellee's representatives attended the April 12, 2007 meeting, despite the fact that the April 12, 2007 Local Board meeting was announced during January and March of the regular session meetings of the Local Board and appellee's representatives were again reminded of the meeting during the April 3, 2007 meeting with the Committee.[3] At the conclusion of the meeting on April 12, 2007, the Local Board voted 4–0 to deny the charter.

That same day, the Local Board sent a letter to appellee and enclosed the Public Agenda for the meeting, the Informational Handout from the meeting and the "Board and SAFE Packet," which contained the results of the review of the application. The packet included a breakdown of the criteria used to evaluate the application, along with a copy of the numerical scoring rubric and appellee's score. Although the document went into great detail about the various categories and sub-categories that were considered, we will provide an overview of the topics considered by the Local Board and the strengths and weaknesses that were identified.

Section One of the evaluation rubric considered the Executive Summary, Profile of the Founding Group, Background Information, Governance Structure, School Management and Administrative Structure, Student Populations, School Calendar and the Recruiting and Marketing Plan. The Local Board identified as strengths in this area appellee's enthusiasm, good will, commitment, ability to raise funds through grants, that

---

**2.** A score of 318 is the minimum to show "basic evidence demonstrating the criterion has been met."

**3.** Appellee contends that it was not informed that its presence was allowed or recommended at the April 12, 2007 meeting, but does not dispute being aware of the April 12, 2007 Local Board meeting.

appellee had made many vendor contacts and had devoted significant funds for marketing and recruitment. The Local Board, however, also found the following to be weaknesses in this section: the summary, mission and goals failed to describe a school that is unique from Somerset County Public Schools, the individual for whom a resume was furnished to the Board had withdrawn his name from consideration from the daily operations of the Board of the proposed charter school, the governing board lacked experience in school leadership and operation, the organizational chart, which was changed throughout the interview process, did not align with the narrative, the budget or the discussion and that the identified goals were not stated in measurable terms.

Section Two of the evaluation rubric considered the Education Plan, the Academic Program, Standards and Curriculum, Student Assessment, Student Support Services, Code of Student Conduct and Parental Involvement and Community Participation. The Local Board again identified a number of strengths in the application, such as: the fact that the application established a 1:20 classroom ratio with a commitment not to go above 1:22, the proposed use of the "Calvert Curriculum" because it was a known and respected tool, the aspiration to provide foreign language and piano lessons to all students, the plan to use project-based learning to engage reluctant learners, the use of the "sophisticated technology," Curriculum Mapper, to track each teacher's instruction, the proposed use of Individual Learning Plans for each student with annual review and the expectation that parents be active participants.

The Local Board, however, pointed to a number of concerns in this area, including "notable calendar problems," a weak Special Education section, a lack of intervention plans to bring students up to grade level, insufficient coordination of implementation of the multiple proposed education plans, a lack of focus on the Maryland State Assessment and the attainment of adequate yearly progress, the inability of the administrative structure to comply with policies and procedures associated with federal and state records management and reporting requirements and a lack of clear procedure detailed in the

application to support the stated goal of maintaining a racial and ethnic balance.

Section Three of the evaluation rubric exposed the greatest number of concerns that the Local Board had with appellee's application. Section Three considered Personnel, Human Resources, Payroll and Benefits, School Facilities, Finances, School Safety and Security, Transportation, Food and Nutrition and Accountability Plan. The Local Board noted several strengths, such as the fact that a budget item for charter school promotion and advertising was included in the application, appellee sought multiple partnerships to provide a facility, appellee had been aggressive in identifying land to use and appellee's plan to maintain employees through the thirteen years that students will spend in the school.

Unfortunately for appellee, the Local Board also noted numerous areas of deficiency in Section Three. Specifically, the Local Board pointed to a lack of a plan to attract and retain effective staff, a lack of clear and complete job descriptions, the failure to realize that the Chief Executive Officer of the school must also have the status of a Somerset County Public School (SCPS) employee, that the design that was submitted for the building was not the design that appellee intended to use, insufficient technology infrastructure in the plans and budgets, a lack of alternative transportation, a lack of food and nutrition services other than relying on SCPS, concerns about a conflict of interest regarding the lease arrangement, a lack of provision for compensation and management of personnel responsible for extra-curricular activities and an excessive amount of funds budgeted for student and staff promotion that may risk limiting other necessary expenditures.

In addition to the list of strengths and weaknesses, the Local Board attached to the packet ten pages detailing the precise categorical breakdown of the possible points and the mean rating of the eleven responses from the committee members.

After the Local Board denied appellee's application, appellee timely noted an appeal to the MSBE. Before the MSBE, appellee challenged the Local Board's decision on three grounds: (1) that the denial of the charter was based on vague evaluation criteria, which lacked an "analytical key," and that appellee did not receive the specific evaluation rubric during the evaluation process, (2) the denial based on budgetary concerns was arbitrary because SCPS did not provide appellee with the necessary funding information and (3) the Local Board abused its discretion based on the local school system's alleged resistance to charter schools.

The MSBE, employing the standard of review set forth in COMAR 13 A. 01.05.05(A),[4] affirmed the decision of the Local Board in *Somerset Advocates for Educ. v. Somerset County Bd. of Educ.*, MSBE Op. No. 07–39 (Oct. 30, 2007). First, the MSBE reviewed the evaluation process employed by the Local Board. Appellee argued in its Memorandum to the MSBE that the MSBE had previously ruled in an earlier case, *Potomac Charter School v. Prince George's County Bd. of Educ.*, MSBE Op. No. 05–08 (Mar. 11, 2005), that technical review of a charter school application must "include an explanation of the applicant's scores or the required analytical key." The MSBE distinguished *Potomac*, however, expositing that "the Board did not conclude that such failure required a finding that the evaluation process was per se arbitrary and capricious but rather, the Board evaluated the process as a whole."

Relying on other prior agency decisions, the MSBE ruled: "What is clear from those cases is that this Board looks at the evaluation process as a whole to determine if the process itself was so unfair that it resulted in an arbitrary decision." The MSBE ruled that the evaluation process was fair based upon the fact that the Local Board provided to appellee a ten-page technical review with requests for clarification in fifty areas, and met with appellee four times to "discuss the application at

---

4. We shall discuss, in detail, the standard of review, *infra.*

length" during meetings lasting sixty to ninety minutes each. The MSBE noted: "Given all those opportunities, it is difficult to conclude that the applicant did not understand how its application was being evaluated." With regard to appellee's claim that the evaluation tool was not congruent with SCPS Charter School Guidance Materials, the MSBE ruled: "Again we explain that the evaluation process is, by necessity, a fluid one. We would not expect absolute congruence between every piece of information the school sends out about charter schools and the evaluation tool. Here, we have reviewed the evaluation tool and find it to be an appropriate tool congruent with the Technical Review."

Finally, with regard to appellee's claim that the Local Board denied the charter due to bias against charter schools, the MSBE reviewed the alleged incidents [5] and concluded that the Local Board's decision did not appear to be influenced by bias against charter schools. "We return to the fact that SCPS spent 450 hours in reviewing the application, meeting with SAFE, and evaluating the amended application. We believe that type of commitment shows good faith on the part of the local school system, not resistence to the charter school effort."

Appellee sought judicial review in the circuit court pursuant to COMAR 13A.01.05.11 [6] and the circuit court reversed the decision of the MSBE, ruling that it was arbitrary and capri-

---

**5.** We shall discuss the alleged incidents, *infra.*

**6.** COMAR 13A.01.05.11 provides:

 A. Any party may appeal a decision to the circuit court of the jurisdiction where the appellant resides within 30 days of the date of the decision of the State Board.

 B. The appeal is governed by Maryland Rules of Procedure 7–201 et seq. and 7–301.

 C. The State Board shall prepare and transmit the record in accordance with the time line set forth in the Maryland Rules of Procedure.

 D. Because the State Board has reviewed and rendered a decision made in the first instance by a local school system official or a local board, the State Board may not participate as a party in an appeal taken to the circuit court.

cious. Appellant noted a timely appeal to this Court. Additional facts will be supplied *infra* as warranted.

## STATUTORY FRAMEWORK FOR CHARTER SCHOOLS IN MARYLAND

Before reaching the merits of this case, we shall provide a brief overview of the charter school movement and application process in Maryland. In *Baltimore City Bd. of School Comm'rs v. City Neighbors Charter School*, 400 Md. 324, 929 A.2d 113 (2007), Judge Wilner, writing for the Court of Appeals, summarized the concept and philosophy behind charter schools:

> Charter schools are in the nature of semi-autonomous public schools that operate under a contract with a State or local school board. The contract, or charter, defines how the school will be structured, staffed, managed, and funded, what programs will be offered, and how the school will operate and account for its activities. The movement to create charter schools, either by converting existing schools or by starting new ones, began in the 1990s from a growing concern that the public schools, at least in some areas, were not living up to legitimate public expectations, and the movement took root and spread quickly
>
> . . . .
>
> The principal objective of those who desired to create such schools—parents, educators, community groups, private entities—was to develop and implement innovative and more effective educational programs, and, to do that, they needed and demanded freedom from some of the structural, operational, fiscal, and pedagogical controls that governed the traditional public school system.

*Id.* at 328–29, 929 A.2d 113.

In 2003, the Maryland General Assembly enacted the Maryland Public Charter School Program currently embodied in Md.Code (2008 Repl.Vol., 2009 Supp.), Education Article (Ed.), § 9–101 *et seq.*[7] Section 9–103(a) vests in the local county

---

**7.** Hereafter, all statutory references shall be to the Education Article unless otherwise stated.

boards of education primary chartering authority and the MSBE is granted secondary chartering authority pursuant to § 9–103(b) when it is "acting in its appeal review capacity or as the public chartering authority for a restructured school in accordance with § 9–104(a) of this title."

§ 9–104 sets forth the application and review procedure, as follows:

(a) In general.—

(1) An application to establish a public charter school shall be submitted to the county board of the county in which the charter school will be located.

(2) An application to establish a public charter school may be submitted to a county board by:

(i) The staff of a public school;

(ii) A parent or guardian of a student who attends a public school in the county;

(iii) A nonsectarian nonprofit entity;

(iv) A nonsectarian institution of higher education in the State; or

(v) Any combination of persons specified in items (i) through (iv) of this paragraph.

(3) A public chartering authority may not grant a charter under this title to:

(i) A private school;

(ii) A parochial school; or

(iii) A home school.

(4) (i) Except as provided in subparagraph (ii) of this paragraph, the county board shall review the application and render a decision within 120 days of receipt of the application.

(ii) For a restructured school:

1. The county board shall review the application and render a decision within 30 days of receipt of the application;

2. The county board may apply to the State Board for an extension of up to 15 days from the time limit imposed under item 1 of this subparagraph;

3. If an extension is not granted, and 30 days have elapsed, the State Board may become a chartering authority; and

4. If an extension has been granted, and 45 days have elapsed, the State Board may become a chartering authority.

(b) Denial and appeal.—

(1) If the county board denies an application to establish a public charter school, the applicant may appeal the decision to the State Board, in accordance with § 4–205(c) of this article.

(2) The State Board shall render a decision within 120 days of the filing of an appeal under this subsection.

(3) If the county board denies an application to establish a public charter school and the State Board reverses the decision, the State Board may direct the county board to grant a charter and shall mediate with the county board and the applicant to implement the charter.

The foregoing statute constitutes the entire statutory framework governing the charter school application process. The specific requirements imposed by local boards to satisfy their own charter school application requirements are not fixed by statute and, therefore, may vary from county to county. Once the Local Board has denied a charter school application, the MSBE may only review that denial on the limited grounds embodied in COMAR 13A.01.05.05(A).[8]

In the case *sub judice,* appellee submitted its application to the Local Board and, after being denied, appealed to the

---

**8.** COMAR 13A.01.05.05(A) provides:

 A. General. Decisions of a local board involving a local policy or a controversy and dispute regarding the rules and regulations of the local board shall be considered prima facie correct, and the State Board may not substitute its judgment for that of the local board unless the decision is arbitrary, unreasonable, or illegal.

MSBE. The MSBE reviewed the Local Board's decision and affirmed the decision of the Local Board. Appellee filed a Petition for Judicial Review in the circuit court and the circuit court thereafter reversed the decision of the MSBE.

## LEGAL ANALYSIS

### I

First, we must determine the precise issues that are before this Court and the appropriate standard of review that we must apply to our analysis of those issues. The parties confuse the issues before this Court and the applicable standard of review by, in part, challenging the ruling of the circuit court and in discussing the arbitrary and capricious standard of review and the substantial evidence test interchangeably in their briefs.

Although the circuit court reversed the decision of MSBE on the basis that the decision was arbitrary and capricious "for failing to follow the precedent it set in Opinion No. 05–08 regarding disclosure of the analytical key," the Court of Appeals has made clear:

> As a court sitting in judicial review of an administrative decision, [Maryland appellate courts] review[ ] the decision in the same posture as that of the courts below. That is to say, we reevaluate the decision of the agency under the same statutory standards as would the circuit court, and we do not employ those standards to reevaluate the decision of the circuit court or intermediate appellate court.

*Charles Co. Dep't of Soc. Serv. v. Vann,* 382 Md. 286, 294, 855 A.2d 313 (2004) (citing *Div. of Labor v. Triangle,* 366 Md. 407, 416, 784 A.2d 534 (2001)); *Dep't of Health & Mental Hygiene v. Campbell,* 364 Md. 108, 123, 771 A.2d 1051 (2001). *See also Taylor v. Harford Co. Dep't Soc. Servs.,* 384 Md. 213, 221–23, 862 A.2d 1026 (2004); *Dep't Hum. Res. v. Howard,* 168 Md.App. 621, 633, 897 A.2d 904 (2006), *rev'd on other grounds,* 397 Md. 353, 918 A.2d 441 (2007). Accordingly, we shall review the decision of the MSBE.

In *City Neighbors Charter School*, the Court of Appeals reiterated the longstanding principle of judicial review of MSBE decisions.

> Summarizing and confirming earlier decisions of this Court, dating back to *Wiley v. School Comm'rs*, 51 Md. 401 (1879), we observed in *Board of Educ. of P.G. Co. v. Waeldner*, 298 Md. 354, 359–62, 470 A.2d 332 (1984) that [the MSBE] "has very broad statutory authority over the administration of the public school system in this State," that the totality of its statutory authority constitutes "a visitatorial power of such comprehensive character as to invest the State Board 'with the last word on any matter concerning educational policy or the administration of the system of public education . . . .' "

400 Md. at 342–43, 929 A.2d 113 (quoting *Resetar v. State Board of Education*, 284 Md. 537, 556, 399 A.2d 225 (1979)).

The Court further noted that two standards of review can be applicable to a decision of the MSBE:

> In actions for judicial review of [MSBE] rulings and decisions, there may be two aspects to the issue of standard of review, although, because they are governed by the same principles, they often coalesce. There is ultimately the question of what standard the court is to apply in reviewing the [MSBE] decision, but subsumed in that may be the question of what standard should be applied by [the MSBE] when, in an appellate capacity, it reviews the decision of a county board of education.

*Id.* at 343, 929 A.2d 113.

■ Accordingly, the Court has explained that, when the MSBE interprets a statute that it administers and applies, " 'the paramount role of the State Board of Education in interpreting the public education law sets it apart from most administrative agencies.' " *Id.* (quoting *Bd. Of Ed. For Dorchester Co. v. Hubbard*, 305 Md. 774, 790–91, 506 A.2d 625 (1986)). "What that statement means is that [MSBE] rulings

must be given heightened, not less, deference." *City Neighbors,* 400 Md. at 343, 929 A.2d 113.

The Court of Appeals has pointed out:

This unbroken and consistent line of cases supports the precepts embodied in COMAR 13A.01.05.05.—that (1) decisions of a local board involving a local policy or a dispute regarding rules or regulations of the local board shall be considered by [MSBE] as *prima facie* correct, and [MSBE] will not substitute its judgment for that of the local board in such cases unless the local decision is arbitrary, unreasonable, or illegal, but (2) [MSBE] shall exercise its independent judgment on the record before it in the explanation and interpretation of the State public school laws and State Board regulations. A local board decision will be regarded as arbitrary or unreasonable if "[i]t is contrary to sound educational policy" and it will be regarded as illegal if it "[m]isconstrues the law" or is "an abuse of discretionary powers." COMAR 13A.01.05.05.B.(1) and C.(3) and (5). *Id.* at 343–44, 929 A.2d 113.

█ In the case *sub judice,* unlike in *City Neighbors Charter School, supra,* the MSBE's decision did not construe a State statute, but instead exercised appellate review of a local board's decision and was required to presume it correct absent a showing that the Local Board's decision was arbitrary, unreasonable or illegal.

█ Before the MSBE, appellee argued that the Local Board's decision was arbitrary and capricious because the criteria were vague, appellee was not provided with an "analytical key" as required by prior MSBE rulings and the evaluation rubric did not reflect the published requirements of the Local Board. The MSBE reviewed the Local Board's denial of appellee's charter application and ruled that it was not arbitrary, unreasonable or illegal because it determined that its prior rulings permit local boards to withhold a scoring rubric in the evaluation of a charter school application as long as the process as a whole is otherwise well-explained and fair to the applicant. Accordingly, we shall now review the

MSBE's decision in the case *sub judice* and determine whether it was arbitrary and capricious. *Md. State Police v. Zeigler,* 330 Md. 540, 557–58, 625 A.2d 914 (1993); *Bond v. Dep't of Pub. Safety & Corr. Servs.,* 161 Md.App. 112, 123, 867 A.2d 346 (2005) ("we apply arbitrary or capricious review . . . when the agency is neither making findings of fact nor drawing conclusions of law, but is acting in a purely discretionary capacity . . . this standard of review is most deferential to the agency.").

We have held: " 'Decisions contrary to law or unsupported by substantial evidence are not within the exercise of sound administrative discretion, but are arbitrary and illegal acts.' " *Hurl v. Bd. Of Educ. of Howard County,* 107 Md.App. 286, 306, 667 A.2d 970 (1995) (quoting *Dep't. of Health v. Walker,* 238 Md. 512, 523, 209 A.2d 555 (1965)). We have further observed:

> BLACK'S LAW DICTIONARY (6th ed.1990) (citations omitted) defines the term "arbitrary" as including something done "without adequate determining principle," "nonrational," and "willful and unreasoning action, without consideration and regard for facts and circumstances presented"; and the term "arbitrary and capricious" as "willful and unreasonable action without consideration or in disregard of facts or law or without determining principle." Finally, the State Board regulations define decisions of a county board as being "arbitrary" where "contrary to sound educational policy" and/or where a "reasoning mind could not have reasonably reached the conclusion the county board reached." COMAR 13A.01.01.03E(1)(b).

*Hurl,* 107 Md.App. at 307, 667 A.2d 970.

When an administrative agency acts in a manner that is inconsistent with its earlier decisions, without providing an adequate explanation for the different results, it acts arbitrarily and capriciously. ARNOLD ROCHVARG, MARYLAND ADMINISTRATIVE LAW, 161 (2d ed.2007). *See also Resetar,* 284 Md. at 562–63, 399 A.2d 225 ("It is impossible to catalogue just what would or would not constitute arbitrary action on the part of

an agency . . . in imposing sanctions, since each situation must be judged on its own facts."); *Maryland State Bd. of Soc. Work Exam'rs v. Chertkov,* 121 Md.App. 574, 586, 710 A.2d 391 (1998) ("Other viable theories of arbitrary or capricious sanctions may include taking improper information into consideration in selecting the sanction or deviating unexplainedly from prior established precedents."); *Eaton v. Rosewood Ctr.,* 86 Md.App. 366, 374–76, 586 A.2d 804 (1991) (citing *Montgomery County v. Anastasi,* 77 Md.App. 126, 137, 549 A.2d 753 (1988)).

In the case *sub judice,* appellant contends that the MSBE did not act arbitrarily and capriciously in declining to reverse the Local Board's decision for its failure to provide appellee with the numerical scoring rubric.[9] Appellee counters that the MSBE's decision was arbitrary and capricious because " . . . the State Board boldly ignored its own prior ruling [in *Potomac Charter School v. Prince George's County Board of Education,* MSBE Op. No. 05–08 (Mar. 11, 2005) ] and failed to provide a legitimate basis for doing so." Appellee contends that the MSBE's alleged departure from this "common sense rule" rendered the application process "patently unfair."

██ Appellant concedes that the MSBE previously noted in *Potomac Charter School v. Prince George's County Bd. of Educ.,* MSBE Op. No. 05–08 at p. 7 that, "if a numerical rating scale is used to evaluate an application, the local board must provide an analytical key that describes with specificity what is necessary or adequate to achieve each point on the scale." Nevertheless, appellant contends: "The State Board has had several opportunities since its opinion in *Potomac Charter Schools* to examine the fairness of evaluating a charter school application without providing a scoring tool to an applicant."

---

**9.** Appellant first argues that the *circuit court* erred in finding that the language set forth in *Potomac Charter School v. Prince George's County Bd. of Educ.,* MSBE Op. No. 05–08 (Mar. 11, 2005) constituted binding precedent and a clear directive to all local boards of education when evaluating charter school applications. We decline to address this argument because, as explained, *supra,* we are not reviewing the decision of the circuit court.

A review of these rulings, appellant posits, "clearly shows that the State Board views the scoring tool as an important, but not mandatory, part of the evaluation process." Therefore, appellant asserts, the MSBE did not act arbitrarily and capriciously in failing to reverse the Local Board's decision based upon its failure to provide appellee with the evaluation rubric. We agree.

In discussing *Potomac Charter School,* MSBE Op. No. 05–08 in its decision in this case, the MSBE noted that "... the failure to provide an analytical key to the applicant raised a concern on the part of the Board, but the Board did not conclude that such failure required a finding that the evaluation process was per se arbitrary and capricious." *Somerset Advocates for Educ. v. Somerset County Bd. of Educ.,* MSBE Op. No. 07–39 at 7 (Oct. 30, 2007). In *Potomac,* the MSBE actually dismissed the appeal as untimely, but had occasion to "describe concerns [the MSBE had] with the evaluation tool used by the local board," one of those concerns being that the Prince George's County Board of Education had failed to provide the applicant with an analytical key until the case was appealed to the MSBE. MSBE Op. No. 05–08 at 6. As appellant correctly contends, the Local Board's actions were not reversed in *Potomac* as a result of the failure to furnish the evaluation rubric.[10]

The MSBE further explained in its opinion in the case *sub judice* that its subsequent decisions in *Imagine Belair Edison Charter School v. Baltimore City Bd. of School Comm'rs.,* MSBE Op. No. 06–16 (May 24, 2006), and *Piscataway Creek*

---

**10.** Appellee incorrectly states in its brief that "... the State Board in *Potomac Charter affirmed* the Local Board's decision only after taking into consideration the Petitioner's charter application." The MSBE neither affirmed nor reversed the local board in *Potomac Charter School,* but instead dismissed the appeal as untimely and merely commented on its concerns with the local board's review process "for the guidance of the parties." MSBE Op. No. 05–08 at 6. In fact, the MSBE concluded its opinion in *Potomac Charter School* as follows: "Therefore, if we were to rule on the merits of the application, we would conclude that the local board did not act arbitrarily or capriciously." *Id.* at 8.

*Montessori Communities, Inc. v. Prince George's County Bd. Of Educ.*, MSBE Op. No. 07–21 (Apr. 24, 2007), highlight that the MSBE "looks at the evaluation process as a whole to determine if the process itself was so unfair that it resulted in an arbitrary decision." In *Imagine Belair Edison Charter School*, the MSBE remanded the case to the Local Board because, since the time that the appeal was noted, facts had changed and the Local Board was willing to reconsider additional evidence from the applicants. MSBE Op. No. 06–16 at 11. In response to the applicant's claim that it did not know what to expect from the charter school application process, the MSBE stated:

> We encourage BCPSS, as we have other school systems, *see Potomac Charter School v. Prince George's County Board of Education*, Op. No. 05–08 (3/11/05), to develop clear guidelines for the evaluation process, to explain the process to all applicants, and to make the process as consistent and transparent as possible. If a numerical scoring system is being used, the point system should be clearly explained to the applicant. Moreover, we reiterate the importance of consistency and fairness in the total evaluation process.

*Id.*

Later, in *Piscataway Creek Montessori Communities, Inc. v. Prince George's County Bd. of Educ.*, MSBE Op. No. 07–21 (Apr. 24, 2007), the MSBE again addressed the use of a numerical scoring system in the charter school application process. As the MSBE explained in its opinion in this case:

> In [*Piscataway* ], it was not clear from the record that the local school system had shared the Evaluation Rubric with the applicants. Despite that flaw, this Board concluded that the evaluation process was a fair one because applicants had ample opportunity to discuss the evaluation criteria in interviews with the Review Committee.

In fact, the MSBE, in *Piscataway,* specifically looked to the information provided to the applicant during its meeting with the Local Board and found it "to be sufficient for an applicant to determine what the application needed to contain, at a

minimum." MSBE Op. No. 07–21 at 7. The MSBE also again encouraged local boards to "develop a transparent charter school application evaluation process, particularly defining with as much specificity as possible what an application must contain and how it will be evaluated." *Id.* at 8. The MSBE affirmed the decision of the local board. *Id.*

Appellee contends: "At best, these decisions involved the upholding of Local Board opinions under distinguishable circumstances. At worst, the decisions simply show that the State Board's pattern and practice with respect to reviewing charter school applications is inconsistent and unjust." We disagree. In its decision in the case *sub judice*, the MSBE discerned that its prior decisions looked to "the evaluation process as a whole...." Guided by its previous decisions, the MSBE concluded that "it is abundantly clear from the facts that the applicant had an extraordinary number of opportunities to discuss with the Review Team their concerns about flaws in the application."

In this case, as the MSBE had done in earlier cases, it looked to whether the applicant had other means of ascertaining what information was required to be in the charter school application aside from the evaluation rubric. In light of the discussion of the MSBE opinions above, we fail to see how the MSBE acted inconsistently and departed from agency precedent in determining that, because appellee received a ten-page Technical Review from the Local Board, met with the Review Team four times to discuss the application and had sufficient guidance from the Somerset County School System's own Public Charter School Guidance Materials, the evaluation process was fair.

Appellee alternatively contends that the charter school application review process was a "sham" and that the evaluation rubric employed by the Local Board was arbitrary. The crux of appellee's contention is that the rubric developed by the Anne Arundel County Public Schools was not congruent with the criteria published by SCPS and, therefore, it was arbitrary

to apply the rubric to appellee's application. The MSBE ruled:

Again we explain that the evaluation process is, by necessity, a fluid one. We would not expect absolute congruence between every piece of information the school sends out about charter schools and the evaluation tool. Here, we have reviewed the evaluation tool and find it to be an appropriate tool congruent with the Technical Review.

Appellant points out that the Checklist that the Local Board provided to appellee contained twenty-two of the twenty-three components used in the numerical rating tool (payroll and benefits were not included on the checklist). Additionally, appellant contends, the Technical Review provided by the Local Board to SAFE followed the subcategory headings on the Application Checklist identically and contained feedback in each area. The primary difference between the rubric and the Local Board's initial written review of appellee's application, appellant correctly notes, is the order in which the various categories were listed. Accordingly, we hold that the MSBE's review of the Local Board's decision was not arbitrary and capricious, but rather was consistent with its prior rulings in similar cases.[11]

## II

 Appellant next contends that the MSBE's review of the Local Board's decision in this case was reasonable and fair in concluding that the Local Board's decision was not influenced by bias against charter schools and we should therefore reverse the decision of the circuit court. We agree.

---

11. It should be noted that, at oral argument before the panel of this Court, appellee's counsel was asked, would not the result be the same irrespective of whether the trial court's decision was affirmed or reversed, *i.e.*, the appellee, in either case, will be required to submit a new application to the Review Committee. Counsel responded in the affirmative. In other words, upon the receipt of the denial of its application and reasons therefore, appellee had the option of simply filing a new application, armed with the stated deficiencies in its application or pursuing judicial review in the circuit court.

Before the MSBE and the circuit court, appellee argued that Local Board's decision was influenced by its resistance to or bias against charter schools, as allegedly demonstrated by the following incidents:

1. SAFE was required to respond to questions that could only be answered effectively after negotiations with SCPS.

2. SCPS failed to document requests for assistance with food services and denied assistance with food services.

3. SCPS failed to provide job descriptions.

4. SCPS retracted an offer of assistance with special education in violation of its written Public Charter School Policy.

5. SCPS denied SAFE the use of a vacant school building in contradiction of its policy.

6. SCPS failed to make staff available to assist in developing a charter school application in contradiction to its Policy.

7. SCPS failed to invite SAFE to the public Board meeting concerning their application.

8. SCPS misrepresented SAFE'S attitude and intentions in the Minutes of the four meetings.

9. SCPS made false statements to the media and community.[12]

---

**12.** Although the MSBE did not specifically evaluate this allegation about media commentary in its opinion, because it is the only allegation that comes close to the issue of partiality or bias, we will briefly comment on it. In appellee's appeal to the MSBE, it alleged that the Superintendent and other members of the Local Board engaged in "fear mongering" by commenting to the media on the tax impact of a charter school and other comments about the decision to deny the charter. Appellee attached to its Memorandum three newspaper articles (one a duplicate version in electronic format, leaving only two substantive articles). None of the statements indicated any negative comment about this particular charter application or charter schools in general, but rather expressed the same concerns voiced in the denial of the charter, *i.e.*, the technical deficiencies in the application. Moreover, the tax comment made by the Superintendent was actually that the voting members were directed *not* to consider the tax impact of the

10. SPCS did not work with SAFE in a way that would enhance chartering effort.

The MSBE ruled that each of the foregoing instances could be categorized as the Local Board's "failure to provide assistance." It concluded:

We return to the fact that the SCPS spent 450 hours in reviewing the application, meeting with SAFE, and evaluating the amended application. We believe that type of commitment shows good faith on the part of the local school system, not resistance to the charter school effort. It may well be that the review and the evaluation process was rigorous, grueling, difficult or even contentious but that does not make the process illegal. When the evaluation process is viewed as a whole, it is our conclusion that it was a fair process and certainly one that was legally sufficient.

Before the circuit court, appellee argued that "[i]t is simply not plausible to conclude that all of these incidents do not evidence a clear bias on the part of the Local Board." The circuit court declined to reach this issue and on appeal to this Court appellee advances no specific counter argument to appellant's claim that the MSBE's decision was unbiased, but instead generally states that the charter school movement "is often met with resistance by the established education bureaucracy." Appellee asserts, relying on *City Neighbors Charter School*, 400 Md. at 329, 929 A.2d 113, that the Court of Appeals has noted that "bias toward charter school applicants is not at all uncommon." Appellee states that the Court of Appeals has explained that charter schools, in general have "... created obvious areas of conflict with various components of the existing public school system—school boards, administrators, teachers unions, and local fiscal authorities—which mostly and often vehemently oppose[ ] the effort...." 400 Md. at 329, 929 A.2d 113. Appellee takes this quote completely out of context. In the quoted portion of *City Neighbors Charter*

proposed charter school in deciding whether to grant the charter. Finally, all of these comments were made and published *after* the Local Board denied appellee's application.

*School,* the Court of Appeals was not discussing the issue of bias against charter school applicants, but instead was providing the history of the charter school movement in Maryland and across the United States to set the stage for the controversial public policy decisions that the movement produced for the Maryland General Assembly prior to the enactment of § 9–101 *et seq.* 400 Md. at 329–30, 929 A.2d 113.

 As appellant properly points out and as we explained, *supra,* on appeal, we review the decision of the MSBE. Implicit in the MSBE's ruling is that none of the alleged incidents demonstrated that bias or impartiality on the part of the Local Board. "In determining whether there is either actual bias or an appearance of impropriety on the part of a decision maker in a judicial or quasi-judicial proceeding, we begin with the presumption of impartiality." *Regan v. State Bd. of Chiropractic Exam'rs,* 355 Md. 397, 411, 735 A.2d 991 (1999). The Court of Appeals has held that the test to be applied when there is an allegation of bias or impartiality is:

> " . . . an objective one which assumes that a reasonable person knows and understands all the relevant facts. . . . Like all legal issues, judges determine appearance of impropriety—not by what a straw poll of the only partly informed man-in-the-street would show—but by examining the record facts and the law, and deciding whether a reasonable person knowing and understanding all the relevant facts would recuse the judge."

*Id.* (quoting *Boyd v. State,* 321 Md. 69, 86, 581 A.2d 1 (1990)). *See also Jefferson–El v. State,* 330 Md. 99, 107, 622 A.2d 737 (1993).

First, we note that appellee never requested that any member of the Local Board or the MSBE recuse himself or herself. Professor Rochvarg has explained that in the context of administrative decision-making, "[i]n general, there are three types of disqualifying bias: financial bias, personal bias and prejudgment bias." Arnold Rochvarg, Maryland Administrative Law, 91 (2d ed.2007). Appellee did not allege matters which involved financial, personal or prejudgment bias in

its list of ten alleged incidents, but rather generally alleged that the Local Board was opposed to the establishment of charter schools. That, in itself, would not constitute a basis for recusal.

■ Assuming, *arguendo*, that the Local Board was generally opposed to granting a charter, such opposition would not have automatically rendered the Local Board unable to make a fair and impartial decision. Moreover, assuming the Local Board was so biased, there is no evidence in the record that was before the MSBE that demonstrates that such "bias" influenced the Local Board's decision to deny appellee's application. Professor Rochvarg has explained that merely possessing a "predilection toward a certain policy" does not render an administrative decision-maker unfit to render an impartial decision. *Id.* at 94.

> For example, an administrative official who has expressed concern over the water quality of the Chesapeake Bay would not necessarily be disqualified in a proceeding involving an application for construction of a medical waste incinerator near the bay unless the official had stated his/her position on the particular facts of that application.

*Id.*

We hold that there was nothing illegal, arbitrary or capricious about the MSBE's determination that the allegations raised by appellee constituted complaints about the Local Board's failure to provide a certain level of assistance during the review process and did not constitute evidence of partiality, bias or a predisposition against charter schools that influenced the Local Board's review of appellee's charter school application. Accordingly, we reverse the judgment of the circuit court.

**JUDGMENT OF THE CIRCUIT COURT FOR SOMERSET COUNTY REVERSED.**

**COSTS TO BE PAID BY APPELLEE.**