REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 42

September Term, 2015

---

FREDERICK CLASSICAL CHARTER
SCHOOL, INC.

v.

FREDERICK COUNTY BOARD OF
EDUCATION

---

Graeff,
Reed,
Zarnoch, Robert A.,
　(Retired, Specially Assigned),

JJ.

---

Opinion by Zarnoch, J.

---

Filed:  March 31, 2016

"The movement to create charter schools, either by converting existing schools or by starting new ones, began in the 1990s from a growing concern that the public schools, at least in some areas, were not living up to legitimate public expectations, and the movement took root and spread quickly." *Baltimore City Bd. of Sch. Com'rs v. City Neighbors Charter Sch.*, 400 Md. 324, 328 (2007). This movement has not been without controversy. In particular, the methodology for disbursing public funds for charter school use has been an area of unique difficulty for policy makers. After six years of discussion and debate, *see id.* at 348-56, the General Assembly passed the Public Charter School Act of 2003. Laws of 2003, ch. 358. The Act provided that funding for charter schools would be "commensurate with the amount disbursed to other public schools in the local jurisdiction." Md. Code (1978, 2014 Repl. Vol.), Education Article ("Educ.") § 9-109(a).

Following the approval of its charter application, in 2013, Frederick Classical Charter School, Inc. ("Frederick Classical"), appellant, protested that the Frederick County Board of Education ("FCPS"), appellee, violated Educ. § 9-109 by failing to include transportation funds in its fiscal year 2014 funding allocation even though Frederick Classical was not providing transportation for its students. This decision was upheld by both the State Board of Education (the "State Board") and the Circuit Court for Frederick County.

Frederick Classical appealed to this Court and presents the following question for our review, which we have rephrased:

> Did the State Board err in finding that the Local Board provided full funding despite the fact that it did not include transportation funding in Frederick Classical's funding allocation?

We hold that the State Board did not err in upholding the decision of FCPS not to include transportation funding for Frederick Classical because FCPS complied with State Board of Education rulings and state education law. We affirm the decision of the circuit court.

## BACKGROUND

### A. Charter School and Transportation Funding

This case concerns a dispute about local board of education funding for a charter school—specifically whether the local board was required to provide funding for transportation services that neither it nor the charter school provided. We begin with background on charter schools and transportation funding in Maryland.

"[E]ach county board shall arrange for the transportation of students to and from consolidated schools."[1] Educ. § 4-120(b). However, local school boards are not required to provide transportation to all students who attend public schools. *See, e.g.*, Educ. § 7-801(b)(1) ("At its own expense, a county governing body *may* provide transportation for public school students in addition to the transportation provided by the State" (Emphasis added)); § 7-805 (specifying conditions under which a school bus may be used to transport any student who lives within the mileage limit). The state distributes grants to the county boards to provide transportation services for public school students and

---

[1] In Prince George's County, this authority is vested in the Chief Executive Officer. Educ. § 4-120(c).

disabled children, pursuant to the formula set out in Educ. § 5-205.[2] This section sets restrictions on this funding, requiring that any excess funds be applied to the following fiscal year and that a county board may not transfer student transportation funding to any other category. Educ. § 5-205(a).

Charter schools are "semi-autonomous public schools that operate under a contract with a state or local school board. The contract, or charter, defines how the school will be structured, staffed, managed, and funded, what programs will be offered, and how the school will operate and account for its activities." *City Neighbors Charter Sch.,* 400 Md. at 328. As the Court of Appeals has noted, the principal objective of those who desired to create charter schools "was to develop and implement innovative and more effective educational programs, and, to do that, they needed and demanded freedom from some of the structural, operational, fiscal, and pedagogical controls that governed the traditional public school system." *City Neighbors Charter Sch.*, 400 Md. at 329. In view of this goal, the State Board of Education has held that the funding mix of each fund source to the local board of education need not be duplicated at the charter school level. *City*

---

[2] The state and the counties each provide funding for primary and secondary education students. *Chesapeake Charter, Inc. v. Anne Arundel County Bd. of Educ.*, 358 Md. 129, 139 (2000). The sources of the approximately $12 billion of education funding are split nearly evenly, with local government contributing 45.63% of funds and the State contributing 47.45% of funds. *The Fact Book 2013 – 2014*, Maryland Department of Education, at 20 (January 30, 2015) (hereinafter "*Maryland Education Fact Book*"), available at http://marylandpublicschools.org/MSDE/divisions/bus_svcs/docs/Fact _Book_2013-2014.pdf. The remaining 7% is funded by the federal government and other sources. *Id.* For fiscal year 2013, student transportation in Maryland cost $570,266,307, which constituted 4.70% of the overall education budget. *Id.* The State provided 31.8% of the funding for student transportation in Frederick County. *Id.*

*Neighbors Charter Sch. v. Balt. City Bd. of Sch. Comm'rs*, MSBE Op. No. 05-17 (2005)

("*City Neighbors*").

Recounting the development of its interpretation of funding allocation for charter

schools, the State Board, in its opinion below, stated:

> The Charter School Program, which became law in 2003, requires that a local board "disburse to a public charter school an amount of county, State, and federal money for elementary, middle, and secondary students that is commensurate with the amount disbursed to other public schools in the local jurisdiction." Md. Code, Educ. § 9-109.
>
> On May 26, 2005, this Board issued three revised opinions explaining the meaning of the terms "commensurate" and "disbursed" in accordance with its power to interpret State education law. This Board stated that the word "commensurate" meant "proportionate" and that "disbursed" meant "expended." *City Neighbors Charter Sch. v. Baltimore City Bd. of Sch. Comm'rs,* MSBE Op. No. 05-17 (2005). This Board further stated that commensurate funding "includes funding for services for which students in the public charter schools are eligible such as free and reduced price meals, pre-kindergarten, special education, English-language learners, Perkins, Title I, and transportation." *Id.*
>
> In order to assist local school systems, this Board provided a formula designed to result in a proportionate amount. *Id.* The formula takes the annual school system operating budget (including all federal, State, and local funding) divided by the September 30 enrollment count for the previous year minus two percent for reasonable central office functions to arrive at the [per pupil allocation ("PPA")]. *Id.* In addition, the charter school may be responsible for reimbursing the school system for the cost of any services that the county provides. *Id.* [The State Board's opinion in *City Neighbors* was upheld by the Court of Appeals in *Baltimore City Bd. of Sch. Com'rs v. City Neighbors Charter Sch.*, 400 Md. 324 (2007).]
>
> A year later, in *Monocacy Montessori Communities, Inc. v. Frederick County Bd. of Educ.,* MSBE Op. No. 06-17 (2006), this Board considered whether a different formula created by FCPS was consistent with State law and the State Board's previous opinions.
>
> *       *       *
>
> [W]e explained that a school system could use a different formula so long as it resulted in a "bottom line amount of money such that this Board could

4

conclude that the school system was providing proportionate/commensurate funds to the charter school." *Id.* We disagreed that the amount of funding must be "equal" because an equal PPA allocation would not take into account the value of in-kind services provided by FCPS. *Id.*

We next analyzed in *Monocacy* the formula applied by FCPS. A major difference in the FCPS formula was that it broke down the unrestricted budget in each of fifteen categories. Under the formula, no money was allocated for transportation because the charter school had agreed that it would provide for the transportation needs of its students. We noted that transportation dollars had been a part of the State Board's standard formula, but that the charter school would not be entitled to these funds if it had agreed to forgo them. After analyzing the FCPS formula in full and comparing it to our own formula, this Board concluded that FCPS needed to pay an additional $12 per pupil in order to meet the commensurate funding requirement. *Id.*

In other words, in *MMCI*, the State Board determined that a local board may use an alternative funding formula, as long as that formula resulted in a per pupil allocation that was similar to the allocation set out in *City Neighbors*. Keeping in mind the State Board's interpretation of Educ. § 9-109 set out above, we now turn to the facts of this case.

### B. Current Proceedings

On April 6, 2011, the Frederick County School Board approved Frederick Classical's application for the formation of a charter school. The Local Board and Frederick Classical subsequently entered into a contract, the charter, that described the relationship between Frederick Classical and FCPS. With regard to school funding, the charter states that:

[i]n accordance with ED § 9-109[3] and further clarified in corresponding State Board Rulings, the [Local] Board shall disburse to [the School] an amount of county, state, and federal money for elementary, middle, and secondary students that is commensurate with the amount disbursed to other public schools in the local jurisdiction.

With regard to transportation of students, Section H of the charter states:

Transportation shall be the responsibility of [Frederick Classical] families with the following exceptions:

1. Students who live along an established bus route that passes the School facility; and
2. Special education students with transportation on their IEP's.

If [Frederick Classical] subsequently determines to provide transportation during the term of this Charter, it may contract with an approved provider for transportation services within provisions allowable under the negotiated agreement.

On June 26, 2013, FCPS provided Frederick Classical with its charter school funding for fiscal year 2014, which calculated the PPA at $8,818.54, resulting in Frederick Classical receiving approximately $2.4 million based on an enrollment of 280 students. On August 14, 2013, Frederick Classical objected to FCPS's allocation formula and contended that it was not consistent with Maryland law because it did "not include the Transportation category of funding . . ." Frederick Classical requested that FCPS consider funding the school to "include, at least, the Transportation category of funding"

---

[3] Section 9-109(a) provides:

A county board shall disburse to a public charter school an amount of county, State, and federal money for elementary, middle, and secondary students that is commensurate with the amount disbursed to other public schools in the local jurisdiction.

in the calculation. In a letter dated September 25, 2013, FCPS denied Frederick Classical's request for transportation funding, stating that its "allocation is based on the formula that has been previously accepted and approved by the Maryland State Board of Education as being consistent with Maryland law and the Board has determined that it is the formula that will be applied here." Neither Frederick Classical nor FCPS provided transportation to Frederick Classical's students.

On October 25, 2013, Frederick Classical appealed FCPS's decision to the Maryland State Board of Education. Frederick Classical requested that the State Board reverse FCPS's decision to deny the funding under the charter and Educ. § 9-109. Alternatively, Frederick Classical asked the State Board for a declaratory ruling that the Local Board's 2013-2014 funding allocation for Frederick Classical is inconsistent with State law. It urged the State Board to apply a *de novo* standard of review and exercise independent judgment in its evaluation of the appeal given that the case represents a dispute as to State public school law.

FCPS responded with a motion for summary affirmance, denying that its decision was arbitrary, unreasonable, or illegal. FCPS filed an affidavit of Leslie R. Pellegrino, CPA, the County Board's Executive Director of Fiscal Services, which stated that when making the calculation for allocating funds to Frederick Classical, her office "use[d] the same approach and formula that was used by the School System and approved in the State Board Opinion issued in *Monocacy Montessori Communities, Inc. v. Frederick County Board of Education*, MSBE Op. No. 06-17 (2006)."

7

On May 20, 2014, the State Board upheld FCPS's decision concerning the level of funding allocated to the School for the 2013-14 school year. *Frederick Classical Charter School, Inc. v. Frederick County Board of Education*, MSBE Op. No. 14-21 (2014). It denied Frederick Classical's alternative request for a declaratory ruling. At the outset, the State Board determined that the appeal concerned a dispute regarding the rules and policies of a local board, and, therefore, it gave deference to the decision of FCPS. The State Board observed that "the local board's decision must 'be considered *prima facie* correct' and upheld unless [Frederick Classical] proves that the local board's decision was arbitrary, unreasonable, or illegal."

The State Board reviewed its previous rulings on the allocation of money to public charter schools. It noted that "[a]lthough transportation costs are among the funds that *could* be included in a [per pupil allocation], this will depend on the arrangement between the local school system and the charter school." In its view, "a plain reading of the Charter language indicate[d] that [Frederick Classical] is not responsible for providing transportation" and that "if [Frederick Classical] received funds for services it did not provide, it would be receiving more than its commensurate share of county funds." The Board upheld the decision of FCPS and held that "[t]aking into account transportation costs is consistent with our prior rulings. In determining a [funding allocation], it is not arbitrary, unreasonable, or illegal for a county to consider the actual services provided by the charter school to reach a commensurate level of funding."

Frederick Classical petitioned for judicial review in the Circuit Court for Frederick County on June 18, 2014. The circuit court upheld the State Board's decision on February 5, 2015. Frederick Classical appealed to this Court on March 6, 2015.[4]

## DISCUSSION

The Maryland Constitution, Art. VIII § 1 directs the General Assembly to "establish throughout the State a thorough and efficient System of Free Public Schools; and shall provide by taxation, or otherwise, for their maintenance." The General Assembly created the Department of Education, headed by the State Board of Education, which is mandated to oversee "[t]he general care and supervision of public elementary and secondary education." Educ. § 2-106. Section 2-205 of the Education Article enumerates the powers and duties of the State Board. It provides that the Board shall "(1) Determine the elementary and secondary educational policies of this State; and (2) Cause to be carried out those provisions of this article that are within its jurisdiction." Educ. § 2-205(b). Subsection (e) describes the Board's abilities to explain the intent and meaning of the Education Article and Maryland education policy:

---

[4] We look through the decision of the circuit court to review the decision of the State Board of Education:

> As a court sitting in judicial review of an administrative decision, [Maryland appellate courts] review[] the decision in the same posture as that of the courts below. That is to say, we reevaluate the decision of the agency under the same statutory standards as would the circuit court, and we do not employ those standards to reevaluate the decision of the circuit court or intermediate appellate court.

*Charles County Dept. of Soc. Services v. Vann*, 382 Md. 286, 294 (2004) (Citations omitted).

9

(1) Without charge and with the advice of the Attorney General, the State Board shall explain the true intent and meaning of the provisions of:
    (i) This article that are within its jurisdiction; and
    (ii) The bylaws, rules, and regulations adopted by the Board.
(2) . . . [T]he Board shall decide all controversies and disputes under these provisions.
(3) The decision of the Board is final.

Section 2-205, therefore, "invests the State Board with the last word on any matter concerning educational policy or the administration of the system of public education. This has been described as 'a visitatorial power of the most comprehensive character.'" *Bd. of Educ. of Talbot County v. Heister*, 392 Md. 140, 153 (2006) (quoting *Wilson v. Bd. of Ed. of Montgomery County*, 234 Md. 561, 564 (1964)).

As a result of the visitatorial power of the State Board on education matters, the decisions of the State Board of Education are entitled to greater deference than those of most other administrative agencies. *Patterson Park Pub. Charter Sch., Inc. v. Baltimore Teachers Union*, 399 Md. 174, 197 (2007) (citing *Board of Education of Talbot County v. Heister*, 392 Md. 140, 155 (2006)). Frederick Classical's arguments to the contrary are unavailing.[5]

---

[5] Frederick Classical also argues that the State Board erred by deferring to FCPS's funding determination and interpretation of the charter. Section 13A.01.05.05 of the State Board's regulations governs the Board's review of local board decisions:

> Decisions of a local board involving a local policy or a controversy and dispute regarding the rules and regulations of the local board shall be considered prima facie correct, and the State Board may not substitute its judgment for that of the local board unless the decision is arbitrary, unreasonable, or illegal.

(Continued . . . )

10

Frederick Classical suggests that we should not give heightened deference to the opinion of the State Board because the "State Board may not decide finally purely legal questions, and may not exercise its powers arbitrarily or capriciously."[6] Although Frederick Classical characterizes this case as purely a matter of contract interpretation, as discussed below, the issues involved in this proceeding constitute an interplay between Frederick Classical's charter, the local school board funding formula, and State Board decisions—matters of education policy rooted deeply in the powers of the State Board. Here, the State Board was deciding a matter of education policy, and, thus deserves the heightened deference accorded to it.

Although we give the decision of the State Board heightened deference, we review the decision under the arbitrary and capricious standard. *See Bd. of Educ. of Somerset County v. Somerset Advocates for Educ.*, 189 Md. App. 385, 401-02 (2009). "'Decisions contrary to law or unsupported by substantial evidence are not within the exercise of sound administrative discretion, but are arbitrary and illegal acts.'" *Hurl v. Bd. of Educ.*

_____

(. . . continued)

Here, the State Board determined that the "appeal concerns a controversy or dispute regarding the rules and policies of a local board," and, thus considered FCPS's decision to be "*prima facie* correct." The State Board's decision evaluated issues resulting from the intersection of a local school's charter, the local school board funding formula, and State Board decisions. In view of the heavy deference that must be accorded to State Board of Education interpretations of the public school laws and its own regulations, we cannot say that the State Board erred in its decision to give deference to FCPS.

[6] Frederick Classical quoted the opinion in *Board of Education of Talbot County v. Heister*, 392 Md. 140 (2006), which, in context, was merely a recognition that the "State Board's powers are not without limit or their exercise unreviewable." *Id.* at 154.

11

*of Howard County,* 107 Md. App. 286, 306-07 (1995) (quoting *Dep't. of Health v. Walker,* 238 Md. 512, 523 (1965)). State Board regulations define decisions of a county board as being "arbitrary" where "contrary to sound educational policy" or where a "reasoning mind could not have reasonably reached the conclusion the local board . . . reached." COMAR 13A.01.05.05B. These regulations define decisions as being illegal, if, among other things, they exceed the statutory authority or jurisdiction of the local board or misconstrue the law. COMAR 13A.01.05.05C. When an administrative agency acts in a manner that is inconsistent with its earlier decisions, without providing an adequate explanation for the different results, it acts arbitrarily and capriciously. *Somerset Advocates for Educ.*, 189 Md. App. at 401-02 (Citation omitted).

Frederick Classical contends that the State Board acted arbitrarily and capriciously in declining to reverse FCPS's decision not to provide transportation funding. Specifically, it contends that the State Board erred in interpreting the charter language, that the State Board's ruling is inconsistent with its decisions in *City Neighbors*, *supra*, and *Monocacy Montessori Communities, Inc. v. Frederick County Bd. of Educ.,* MSBE Op. No. 06-17 (2006) ["*MMCI*"], and that the Board's ruling was inconsistent with state law because it resulted in a disproportionate funding allocation. FCPS responds that the State Board's decision was not arbitrary or capricious because charter language unambiguously placed the responsibility for transportation on Frederick Classical families and because the funding formula used in this case is consistent with *City Neighbors* and *MMCI* and does not violate state law. FCPS maintains that due to the nature of the budget process it is not withholding transportation funding to spend on other

schools' students, and so the formula does not result in disproportionate funding.[7]

The State Board determined that FCPS's funding allocation was consistent with its previous orders and with a plain reading Frederick Classical's charter. Regarding transportation, the charter states: "Transportation shall be the responsibility of [Frederick Classical] families with the . . . exception[]" of students who live along an established bus route and certain special education students. Based on this language, the Board concluded that "a plain reading of the Charter language indicates that [Frederick Classical] is not responsible for providing transportation," and that instead, "the responsibility falls on parents and the county (for students living along an established route or special education students)." Because it was undisputed that Frederick Classical did not at the time provide transportation for its students and did not provide transportation during the 2013-2014 school year, the Board concluded that Frederick Classical was not entitled to transportation funds. It further noted that if Frederick Classical received funds for transportation services it did not provide, "it would be receiving more than its commensurate share of county funds."

Frederick Classical argues that the Board erred in interpreting the charter because the language does not imply that Frederick Classical agreed to "forego" transportation funds, and because the charter allows it to later provide transportation for its students. To

_____

[7] FCPS also argues that Frederick Classical is not entitled to transportation funding because Frederick Classical students are not eligible for transportation. We do not decide this specific issue because the eligibility of Frederick Classical students for transportation was not addressed below and was not a ground relied upon by the State Board in upholding FCPS's decision.

support this argument, Frederick Classical relies on a tautology, that "[t]he State Board simply disregards that the School is entitled by law to receive transportation funding in its allocation, and that the School has not agreed to forego those funds." Initially, we note that it does not matter whether Frederick Classical can *later* contract to provide transportation, because it was uncontroverted that Frederick Classical was not providing transportation. The charter by its plain language states that transportation "shall be the responsibility of [Frederick Classical] families" except for students who live along established bus routes and certain special education students. Discerning no error in the State Board's interpretation, we hold that the charter was unambiguous—the plain language of the charter clearly shifts the responsibility for transportation from Frederick County to Frederick Classical families.

Frederick Classical also contends that the State Board erred in its reliance on two prior rulings—*City Neighbors* and *MMCI*. In its opinion below, the Board reiterated a primary holding in those cases—"that commensurate funding does not mean that the [per pupil allocation] must be exactly the same between a charter school and other public schools." The Board recognized that transportation costs were not required to be included in the amount of funding that a charter school received, and that whether such costs should be included depended on the negotiations between the charter school and the local school board. Resolutely, the Board declared, "The bottom line is that a charter school is not automatically entitled to funds for services it does not provide."

Frederick Classical argues that the State Board's language above is inconsistent with its decision in *City Neighbors* because that prior decision mandated that

14

transportation funding be included in the "commensurate" funding allocation for charter schools. Specifically, Frederick Classical argues that the following statement by the Board in *City Neighbors* confirms its reading:

> we believe the legislature intended that a public charter school receive federal, State, and local funding in an amount proportionate to the amount of funds expended for elementary, middle, and secondary level students in the other public schools in the same system. This includes funding for services for which students in the public charter schools are eligible such as free and reduced price meals, pre-kindergarten, special education, English language learners, Perkins, Title I, and transportation.

However, other parts of the *City Neighbors* opinion belie Frederick Classical's argument that the Board intended to require that the local school board provide funding for transportation in all circumstances. The Board recognized that flexibility is a central aspect of the charter school program—"the charter school is a public school operating with *agreed upon terms of flexibility* within a public school system." (Emphasis added). The Board also adopted and incorporated by reference "guidance documents" that had been prepared, at the Board's request, by State Department of Education officials and that had been discussed at the Board's open meeting on May 24, 2005. As the incorporated documents acknowledged, "[t]he calculation of average cost does not mean that the funding mix of each fund source to the [local school system] must be duplicated at the Charter School level." Further,

> [a]s a part of the contract agreement between the [local school system] and Charter School, transportation should be addressed for all students including students with disabilities attending the charter schools. This may include the Charter School returning to the [local school system] the portion of funds provided for transportation or the Charter School providing the transportation service for the student.

15

Thus, the Board, in *City Neighbors*, appreciated that transportation may, but does not have to be, included in the funds provided to a charter school. The Board's opinion in this case is not inconsistent with its *City Neighbors* opinion.

Nor is the Board's opinion in this case contrary to the Court of Appeals's decision upholding the State Board in *City Neighbors*. Frederick Classical maintains that the Court of Appeals specifically rejected an argument that transportation funds must be excluded from the aggregate per pupil funding amount. However, the Court's decision rejecting the *mandatory* exclusion of transportation funds from the per pupil allocation amount is not an affirmative holding that transportation funds can never be excluded from the funds dispersed to a charter school. In fact, when tracing the legislative history of the charter school law, the Court of Appeals noted State Department of Education guidelines, stating that "[o]ther fiscal support such as transportation may be part of the negotiations between the charter requestor and the local education authority." *City Neighbors Charter Sch.*, 400 Md. at 350 (citing *Guidelines for Use by Local School Systems in Considering Charter School Applications,* Maryland State Department of Education, July, 1997, at 8).

Further, Frederick Classical fails to acknowledge that the State Board clarified the meaning of its ruling in *City Neighbors* in a subsequent opinion, *MMCI*. Adjudication is a permissible mechanism by which the State Board "may exercise its statutory authority to 'explain the true intent and meaning' of the public school laws and decide 'controversies and disputes' under those laws." *City Neighbors Charter Sch.*, 400 Md. at 346. The State Board was well within its discretion to proceed by adjudicating the case

16

before it—*MMCI*—and offering guidance to other applicants, such as Frederick Classical, rather than proceeding with formal rulemaking. *See id.*

In *MMCI*, the State Board held that the language it used in *City Neighbors* should not be strictly construed, and that the formula it announced there was not the only way a local school board could distribute funding to a charter school. The Board clarified that it "did not intend such a rigid approach to determining commensurate funding." In other words, in *MMCI*, the Board rejected the very interpretation that Frederick Classical now advances—that the *City Neighbors* decision was the sole means by which a county could disburse funds to charter schools. Instead, the Board confirmed that it did not intend that the formula it presented in *City Neighbors* "be used, *without deviation*, by every local school system in calculating a charter school's funding allocation, no matter what the circumstances." Thus, based on the Board's subsequent clarifications, it cannot be said that the Board's opinion in this case was inconsistent with *City Neighbors* or its progeny.

Next, Frederick Classical contends that the State Board committed plain error by misconstruing its own decision in *MMCI* to support the proposition that "if [Frederick Classical] received funds for services it did not provide, it would be receiving more than its commensurate share of county funds." Under a plain reading of *MMCI*, however, the Board *did* announce this view, albeit using different words. The Board stated that "[i]f MMCI were entitled to the full per pupil amount, however, MMCI would receive an amount greater than an 'equal' amount of funds," and referenced the fact that transportation was to be provided by the charter school. The Board, in this case, did not misread its own decision in *MMCI*.

17

Frederick Classical further attempts to distinguish the *MMCI* decision by pointing to language in its charter that, it argues, sets it apart from the charter in *MMCI*. Frederick Classical argues that it "never agreed (through the [charter] or otherwise) to take on at its own cost the responsibility of providing transportation to students." In *MMCI*, the charter stated, "transportation shall be the responsibility of MMCI except for students who live along an established route and for special education students." Here, although Frederick Classical's charter places the responsibility for transportation on Frederick Classical families, instead of the institution itself, the outcome is the same. If the charter provides that either the charter school or families have a duty to transport the students, the result is that the local school system is *not* responsible for the transportation or for including funds for transportation in a per pupil allocation.

Frederick Classical directs us to language in its charter that allows it to provide transportation for its students at a later date, if it so desires. However, this language has no bearing on Frederick Classical's current funding allocation. As argued by FCPS, "Whether or not [Frederick Classical] may, in the future, determine to provide transportation for its students, the uncontested fact is that at the current time, it is not doing so, and therefore, it is not entitled to transportation funding from the County Board for a service it is not providing." By the terms of their charters, both MMCI and Frederick Classical relieved FCPS of a duty to provide funding for transportation, lest the charter schools would receive more than their "commensurate" share of education funds.

Frederick Classical contends that by failing to disburse transportation funding, FCPS retained that money in the system-wide budget, "inevitably redistributing and

18

spending those funds on other students in the school district."

FCPS, in its brief, wrote cogently on this matter.

> The County Board's transportation budget is based on the total cost to actually transport students living in the transportable areas and for special education students needing specialized transportation. The budget does not include costs for students who are not transported by the County Board. Therefore, the County Board is not "retaining" any money from that budget to be "inevitably" redistributed and spent on other students in the school district, as alleged. The County Board's transportation budget does not include the costs of transporting the Charter School students and it does not allocate money to students attending the Charter School, who are not entitled to transportation. Therefore, the County Board is not profiting by not including a portion of its transportation budget in the allocation to the Charter School, nor are other students benefitting thereby.

*See Fiscal Year 2014 Adopted Operating Budget*, Frederick County Public Schools, at 13-14, 25, 32 (2013), *available at* http://www.fcps.org/about/docum ents/FY14ADOPTEDBUDGETBOOKColor.pdf.

Frederick Classical makes several arguments based on its interpretation of the charter as a contract—maintaining that "the families of the School are not parties to the [charter], and so cannot be deemed to have voluntarily contracted to surrender portions of the School's funding," and urging us to construe the charter language against FCPS. To the extent that contract law controls this issue, we have already held that the language of the charter was not ambiguous, and that under a plain reading of the charter, Frederick Classical families must provide transportation for students except in certain circumstances. In spite of Frederick Classical's arguments, the issue here is one of state educational policy where State Board's decisions are paramount. Frederick Classical has not provided a case or decision of the State Board where the Board has construed a

19

charter against a local board solely because the local board prepared the document. Thus, we decline to do so here.

Finally, Frederick Classical argues that allowing a local school board to restrict funds for services a charter school has the right to provide, but does not currently provide, "would have the absurd result of compelling charter schools to budget themselves identically to system schools." It maintains that this "would defeat the purpose of the State's charter school program," which is to provide a flexible alternative to public schools. On the contrary, Frederick Classical's decision not to participate in the public school transportation program is emblematic of the flexibility accorded to charter schools, realized here in the charter negotiations with FCPS. Frederick Classical cannot now complain that it has been given short shrift, contrary to its charter, by not receiving transportation funding for transportation services that it does not provide. For the above-mentioned reasons, we conclude that FCPS's funding allocation was not contrary to state law and that the formula used was consistent with the State Board's opinions.

**JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**