556 A.2d 273

**Bobby CLINTON et ux.**

v.

**BOARD OF EDUCATION OF HOWARD COUNTY.**

No. 99, Sept. Term, 1988.

Court of Appeals of Maryland.

April 12, 1989.

Edward Smith, Jr. (Cummings and Smith, P.A., both on brief), Baltimore, for appellants.

Michael S. Molinaro (Charles A. Reese, Reese and Carney, all on brief), Columbia, for appellee.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (retired) Specially Assigned.

ADKINS, Judge.

 In this case we shall invoke the doctrine of primary jurisdiction in order to give the Maryland State Board of Education (State Board) the opportunity to consider the issues here presented regarding State-wide educational law, policy, and administration. Generally, these issues arise within the context of § 2–201 (and related provisions) of the Education Article of the Maryland Code.[1] Section 2–201 commands that "[t]here shall be throughout this State a general system of free public schools...."[2] *See also, e.g.,* § 7–101(a) ("All individuals who are 5 years old or older and under 21 shall be admitted free of charge to the public schools of this State").

It is within this general framework that the litigants in this case raise the question of whether the provisions establishing a system of free public schools entitles children who are residents of one county to attend public schools in another county without payment of tuition by their parents.

## I.

On or about 11 June 1986, the appellants, Bobby and Joyce Clinton (the Clintons), then residing in Baltimore

---

1. Unless otherwise indicated, all statutory references are to the Education Article of the Maryland Code (1985 Repl.Vol., 1988 Cum.Supp.).

2. This statute reflects the mandate of Article VIII, § 1 of the Maryland Constitution:

 The General Assembly, at its First Session after the adoption of this Constitution, shall by Law establish throughout the State a thorough and efficient system of Free Public Schools; and shall provide by taxation, or otherwise, for their maintenance.

 For a comprehensive account of the history of the constitutional provision, see *Hornbeck v. Somerset Co. Bd. of Educ.*, 295 Md. 597, 619–631, 458 A.2d 758, 770–776 (1983).

County, Maryland, sought to enroll their three children (subsequently only two were determined to be of school age) at Swansfield Elementary School in Howard County, Maryland. The Clintons were then in the process of arranging the purchase of a new home in Clary's Forest, Columbia, Howard County. They expected to move in to their new home by early autumn 1986. On 28 July 1986, Dr. Noel T. Farmer, Jr., Associate Superintendent of Schools for Howard County, approved the Out-of-District Enrollment forms for the two school-age minor children, Thandiwe and Abasi. On each form a move-in date of October 1986 was noted. Each form also indicated that failure to move into the new school district by the date noted would require the child to be transferred to the school district of residence.

In September 1986, the Clinton children enrolled at Swansfield Elementary School. Because of circumstances apparently beyond their control, the Clintons did not move into Howard County by October 1986. In fact, the Clintons did not move into Howard County during the entire 1986–1987 school year. The children, however, continued to attend Swansfield Elementary.

From December 1986 through February 1987, it appears that several deadlines for meeting the residency requirements were set, and extensions to those deadlines were sought and granted. Thereafter, the Clintons were notified that if the Howard County residency requirements were not met by 27 March 1987, their children would be excluded from the county public schools.

On 26 March 1987, the Clintons filed a complaint against appellee, the Howard County Board of Education (County Board), and others, in the Circuit Court for Howard County, seeking interlocutory and permanent injunctive relief. On 2 April 1987, the circuit court (Fischer, J.) granted an interlocutory injunction, enjoining the defendants from displacing or reassigning the Clinton children from Swansfield Elementary. This order was amended on 7 May 1987 to

provide that the interlocutory injunction would expire at the end of the school year, 19 June 1987.

Prior to issuance of the amended order, the County Board filed a motion to dismiss the Clintons' complaint. Then, on 15 July 1987, the County Board filed a counterclaim for $6,360, representing the Clinton childrens' 1986–1987 school year tuition. A bill dated 9 July 1987, for the same amount, had previously been sent to the Clintons.[3] On 16 July 1987, the court granted the County Board's motion to dismiss. Only the counterclaim for tuition remained. On 13 May 1988, following months of legal maneuverings by the parties, the court issued an order for partial summary judgment in favor of the County Board for $4,876.[4]

The Clintons appealed.[5] They challenged the lower court decision on statutory and State constitutional grounds. This Court granted a writ of certiorari prior to argument in

---

**3.** The 9 July bill appears to have been the first official notice that tuition was owing. None of the correspondence (made part of the court record) during the winter of 1987 between the Clintons and school district officials mentions the possibility of parental liability for tuition. Those communications focused only on the exclusion of the Clinton children from the county public schools if they failed to meet residency requirements. The first mention of tuition in the record appears in the circuit court's 2 April injunction order which states that the County Board's right to appropriate tuition is not prejudiced. Presumably, the right to tuition was raised by the County Board in the hearing that preceded the injunction. We cannot be sure, however, since a transcript of that hearing was not made part of the record that was transferred to this Court. In any event, it appears that the possibility of being charged tuition was not brought to the Clintons' attention until late in the school year.

**4.** There was a factual dispute about part of the tuition claimed by the County Board. The circuit court entered summary judgment only with respect to the portion not factually disputed.

**5.** The judgment appealed from was not final because it adjudicated "less than an entire claim...." Md.Rule 2–602(a). The circuit court could have directed the entry of final judgment pursuant to Rule 2–501(e)(3), but did not do so. The lack of a final judgment was made correctable at oral argument, however, when counsel for the County Board waived the unadjudicated portion of the claim. That action permits us to enter final judgment for the undisputed amount (*see* note 4, *supra*) pursuant to Rule 8–602(e)(1)(C).

the Court of Special Appeals. 314 Md. 130, 549 A.2d 752 (1988).

## II.

Called into question here is Howard County School Board Policy 14412 entitled "Enrollment and Tuition of Students Whose Parent(s) or Legal Guardian(s) Are Nonresidents of Howard County." It provides, in part, that

[a]ll qualified school age minor persons whose parents do not have an established bona fide residence in Howard County or those majority aged students who themselves have not established bona fide residence in Howard County shall be considered nonresident students. Such students may be admitted to the Howard County Public Schools; however, tuition shall be charged and paid unless waived.

As a prefatory matter, we note that there are no Maryland statutes or rules, regulations, or bylaws of the State Board which address the validity of the County Board policy. Nor are there any reported opinions of the appellate courts of this State, or reported opinions of the State Board, which address this precise issue.

The Clintons do not deny that they and their children were not residents of Howard County during the time applicable here. The Clintons argue, however, that the County Board's policy is repugnant to the mandates of § 1–201, which provides for "a general system of free public schools"; § 7–101(a), which establishes that individuals between the ages of 5 and 21 "shall be admitted free of charge to the public schools of this State"; and Article VIII, § 1 of the Maryland Constitution which underpins each of these provisions. *See* note 2, *supra.* [6] They concede that

---

6. In *Clark v. Maryland Institute,* 87 Md. 643, 661, 41 A. 126, 129 (1898), the Court declared that:

The Constitution of this State requires the General Assembly to establish and maintain a thorough and efficient system of free public schools. This means that the schools must be open to all

the General Assembly has the authority to establish county residency requirements as a prerequisite to free public education in a particular county school district. But they contend that such authority rests exclusively with that law making body and cannot be delegated to the State Board or to local school boards. They point out that of all the several county school districts of this State, only the Prince George's County School District has a statutorily established residency requirement for the use of free public schools. *See* § 7–102.[7]

The County Board rebuffs these contentions, arguing that the right to free public education must be analyzed within the statutory framework of the Education Article which gives local boards control over educational matters within their respective jurisdictions. In essence, it argues that the history behind Article VIII, § 1 (as set out in *Hornbeck, see,* note 2, *supra*) indicates that the structure and organization of Maryland's free public school system were left to the dictates of the legislature and are now embodied in the Education Article. Significant among these enactments, the County Board notes, is § 5–104 which requires a county to levy and collect tax on real property within the county to meet the appropriations in the annual budget of the county school board.

Also of substantial importance, according to the County Board, is § 4–120 which establishes that students living near a county boundary line are permitted to attend school in the adjoining county, with funding to be provided by the students' county of residence. Similarly, under § 4–120.1

---

without expense. The right is given to the whole body of the people.

7. We hasten to point out that § 7–102 does not, on its face, establish a residency requirement. It does, however, require that the Prince George's County School Board base admission to the public schools on the completion of an affidavit disclosing a student's parent(s) or guardian(s) legal residence and duration of residency in the State. *See* § 7–102(b). The provision does not expressly make *county* residency a requirement for admission, nor does it in any way address the issue of tuition.

children who have been placed by a State agency or are under foster care in a particular county are entitled to free public education in that county with the bulk of the cost of the education to be borne by the financially responsible county, *i.e.*, the county in which the parents or legal guardians reside. The County Board contends that §§ 4–120 and 4–120.1 indicate that nonresidents of a county do not possess an inherent right to attend that County's public schools free of charge.

## III.

This summary of the arguments presented in this case makes clear that important issues of interpretation of the Education Article are here involved. Furthermore, intertwined with the statutory considerations are questions involving educational policy and the administration of Maryland's public education system. The implications are Statewide. Some county school districts, like Howard County, have policies under which State residents may be charged tuition if they are not also residents of that county; *see e.g.*, Anne Arundel County, Board of Education, Adm.Reg. 9–21 (revised 1981); Baltimore County, Board of Education, Policy 5150 (approved 1987); Carroll County, Board of Education, Policy JECB (revised 1985); Harford County, Board of Education, Descriptor Code .07.01.020 (reaffirmed 1980); Montgomery County, Board of Education, Policy JED (adopted 1987); and Washington County, Board of Education, Policy JECB (adopted 1975). Other school boards such as those in Allegany County and St. Mary's County, for example, have not established similar policies, so far as we are aware.

Contrary to the assertion of the Howard County Board, we do not believe that the State Board, in *Armour v. Board of Education of Montgomery County,* 2 Opinions of the Md. State Bd. of Educ. 123 (1979), authorized the local boards to engage in the practice of charging tuition to State residents who are nonresidents of their counties. That case is not dispositive of the issue. *Armour* arose out of a case

initially filed on 25 June 1979 in the Circuit Court for Montgomery County challenging the Montgomery County School Board's "Nonresident Tuition Policy." This policy was substantially similar to the Howard County School Board policy now being challenged by the Clintons. The circuit court, on its own motion, stayed further proceedings pending resort to the State Board. On 31 July 1979, Armour filed such a proceeding pursuant to § 2–205(e). Then on 20 August 1979, nine days before the issue was to be heard by the State Board, the Montgomery County Board rescinded the policy at issue and adopted a new policy entitled "Enrollment and Tuition for Students Not Domiciled in Montgomery County." The Montgomery County Board altered the old policy by substituting the phrase "not domiciled in Montgomery County" and "nondomiciled" for "nonresident," and by swapping the word "residents" for "domiciliaries." In addition, it added a section defining what was meant by "domicile of student" and therein established a presumption that a noncitizen was a nondomiciliary.[8]

Since the policy had been changed prior to hearing, the State Board addressed the new policy rather than the old. Thus, in *Armour*, the Board reviewed the school district's right to charge tuition to "nondomiciliaries" of the county rather than the right, under the old policy, to charge "nonresidents" of the county. The State Board held that the policy was "inconsistent with the free public school laws of this state as found in §§ 1–201 and 7–101(a)." *Armour*, 2 Opinions of the Md. State Bd. of Educ. at 131 [footnote omitted]. It then concluded that "it is the educational policy in Maryland, consistent with the constitutional and statutory provisions for free public education, that all children within the borders of this State who are bona fide residents, are entitled to free public school privileges." *Id.* at 132.

---

8. In this connection, *see Toll v. Moreno*, 284 Md. 425, 397 A.2d 1009 (1979).

It is true that the State Board in dicta declared that "county boards of education are empowered to require that students attending their schools be residents of their particular county." *Id.* at 126 [footnote omitted]. A county school board's authority to exclude nonresidents from its public schools is different, however, from the alleged authority to charge nonresidents of the county tuition once permission has been granted to attend a public school within that district. This issue was not one addressed by the State Board in *Armour.* All that the State Board there decided was that parents resident in but not domiciliaries of a county could not, simply because they were nondomiciliaries, be charged tuition for their children's attendance of the county's schools.

The various questions here involved regarding interpretation of the public education law and education policy and administration are within the original jurisdiction of the State Board. *See Montgomery Co. Ed. Ass'n v. Bd. of Educ.,* 311 Md. 303, 309–310, 534 A.2d 980, 983 (1987); *Bd. of Ed. for Dorchester Co. v. Hubbard,* 305 Md. 774, 788–789, 506 A.2d 625, 631–632 (1986); *Board of Educ. of P.G. Co. v. Waeldner,* 298 Md. 354, 359–361, 470 A.2d 332, 335 (1984); *Zeitschel v. Board of Education,* 274 Md. 69, 80, 332 A.2d 906, 912–913 (1975). And as far as we can discern, the State Board has yet to address the issues in this case.

The original jurisdiction of the State Board arises from § 2–205, which sets forth the Board's powers and duties. Section 2–205(b) gives the State Board the authority to "(1) [d]etermine the elementary and secondary educational policies of this State; and (2) [c]ause to be carried out those provisions of [the Education] [A]rticle that are within its jurisdiction." Section 2–205(c) instructs the State Board to "adopt bylaws, rules, and regulations for the administration of the public schools," which will "have the force of law when adopted and published." Section 2–205(e) provides:

> *Explanations of law; controversies and disputes.*—(1) Without charge and with the advice of the Attorney

General, the State Board shall explain the true intent and meaning of the provisions of:

(i) This article that are within its jurisdiction; and

(ii) The bylaws, rules, and regulations adopted by the Board.

(2) The Board shall decide all controversies and disputes under these provisions.

(3) The decision of the Board is final.

Section 2–205(g)(2) gives the State Board, through the State Superintendent, "general control and supervision over the public schools and educational interests of this State." This Court has recognized that

'§ 2–205 was intended by the General Assembly as a grant of *original* jurisdiction to the State Board, such that, in the limited instances enumerated in that section, a litigant could go directly to the State Board for a decision without the need for exhausting any lower administrative remedies. Since the category of cases involved deal primarily with statewide issues (i.e., statutes and/or by-laws applicable to *all* county boards of education), no useful purpose would be served by *requiring* a lower level administrator or agency to decide a question of statewide applicability.'

*Board of Educ., Garrett Co. v. Lendo,* 295 Md. 55, 65, 453 A.2d 1185, 1190 (1982) (quoting, with favor, the amicus brief filed in that case by the Maryland State Teachers Association, Inc. [emphasis in brief]).

The totality of these provisions has been described as a visitatorial power of such comprehensive character as to invest the State Board "with the last word on any matter concerning educational policy or the administration of the system of public education." *Resetar v. State Board of Education,* 284 Md. 537, 556, 399 A.2d 225, [235,] *cert. denied,* 444 U.S. 838, 100 S.Ct. 74, 62 L.Ed.2d 49 (1979); *Wilson v. Board of Education,* 234 Md. 561, 565, 200 A.2d 67 [, 69] (1964). The broad sweep of the State Board's visitatorial power has been consistently recognized and applied since the principle was first enunciated

in 1879 in *Wiley v. School Comm'rs,* 51 Md. 401 [1879]. *See, e.g., Shober v. Cochrane,* 53 Md. 544 (1880); *Underwood v. School Board,* 103 Md. 181, 63 A. 221 (1906); *Zantzinger v. Manning,* 123 Md. 169, 90 A. 839 (1914); *School Commissioners v. Morris,* 123 Md. 398, 91 A. 718 (1914); *School Com. of Car. Co. v. Breeding,* 126 Md. 83, 94 A. 328 (1915).

*Waeldner, supra,* 298 Md. at 360, 470 A.2d at 335.

In *Zeitschel, supra,* 274 Md. at 81, 332 A.2d at 912–913, the Court described the State Board's visitatorial powers thus:

> We think it beyond question that the power of visitation vested in the State Board is one of general control and supervision; it authorizes the State Board to superintend the activities of the local boards of education to keep them within the legitimate sphere of their operations, and whenever a controversy or dispute arises involving the educational policy or proper administration of the public school system of the State, the State Board's visitatorial power authorizes it to correct all abuses of authority and to nullify all irregular proceedings.

 In the past when this Court has been confronted with an issue which is within the concurrent jurisdiction of the State Board and a court, and one which is more appropriately within the Board's area of authority and expertise, we have invoked the doctrine of primary jurisdiction to provide the State Board with an opportunity to review the issue.[9] As Judge Eldridge explained for the Court in *Hubbard,* 305 Md. at 786, 506 A.2d at 630–631 (quoting *Wash. Sub. San. Comm'n v. Mitchell & Best,* 303 Md. 544, 561–562, 495 A.2d 30, 39 (1985)):

> 'Primary jurisdiction "is a judicially created rule designed to coordinate the allocation of functions between courts

---

**9.** While none of the parties herein has raised the question of primary jurisdiction, this Court has the authority to raise this issue sua sponte. *Bd. of Ed. for Dorchester Co. v. Hubbard,* 305 Md. 774, 787, 506 A.2d 625, 631 (1986).

and administrative bodies." *Maryland Nat'l Capital Park & Planning Comm'n v. Washington Nat'l Arena,* ... 282 Md. [588,] 601, 386 A.2d [1216,] 1225–26 [ (1978) ]. The doctrine "comes into play when a court and agency have concurrent jurisdiction over the same matter ... and there is no statutory provision to coordinate the work of the court with that of the agency." *Id.* at 601, 386 A.2d at 1226 (citation omitted).'

Ordinarily, when there are two forums available, one judicial and the other administrative, each able to afford essentially the same remedy, and no statutory directive indicating which should be pursued first, a party is often first required to run the administrative remedial course before seeking a judicial solution. *Id.; Sec. Dept. of Hum. Res. v. Wilson,* 286 Md. 639, 645, 409 A.2d 713, 717 (1979). *See also Md.–Nat'l Cap. P. & P. Comm'n v. Crawford,* 307 Md. 1, 18, 511 A.2d 1079, 1087 (1986). This requirement of exhaustion of administrative remedies rests upon a determination that the administrative remedy is primary. *Hubbard,* 305 Md. at 786, 506 A.2d at 631, and cases cited therein.

Without question, the State Board and the circuit court have concurrent jurisdiction in this case. But we believe the questions regarding the interpretation and interplay between the various provisions of the Education Article which arise within the context of the Clintons' challenge to the Howard County School Board policy are better addressed by the State Board. We conclude, therefore, that the State Board has primary jurisdiction over the matter.

The State Board plays a " 'paramount role ... in interpreting the public education law....' " *Montgomery Co. Ed. Ass'n, supra,* 311 Md. at 309, 534 A.2d at 983 (quoting *Hubbard, supra,* 305 Md. at 791, 506 A.2d at 633). Indeed, it is this role which " 'sets it apart from most administrative agencies.' " *Id.* Moreover, "[t]he General Assembly has charged the State Board, not the courts, with the duty of determining the elementary and secondary educational policies of the State." *Montgomery Co. Ed. Ass'n,* 311 Md. at

310, 534 A.2d at 983. Educational and administrative policy issues are closely intertwined with the legal issues here implicated. We, therefore, invoke the doctrine of primary jurisdiction in order that this important question regarding nonresident tuition may be brought to the State Board for its consideration.[10]

We vacate the judgment of the Circuit Court for Howard County. That court is directed to stay further proceedings for a reasonable time to permit the Clintons to seek review of this issue by the State Board. If the State Board decision is adverse to the Clintons, and they choose to seek judicial review of that decision, that review could then be consolidated with the instant case. *See Hubbard, supra,* 305 Md. at 792–793, 506 A.2d at 634; *Offutt v. Montgomery Co. Bd. of Ed.,* 285 Md. 557, 562, 404 A.2d 281, 284 (1979).

PURSUANT TO MD. RULES 2–602(B)(2) AND 8–602(E)(1)(C), FINAL JUDGMENT IN THE CIRCUIT COURT FOR HOWARD COUNTY ENTERED IN FAVOR OF THE BOARD OF EDUCATION OF HOWARD COUNTY AND AGAINST BOBBY CLINTON AND JOYCE CLINTON IN THE AMOUNT OF $4,876.00 AND COSTS. JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY, AS SO ENTERED, VACATED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT TO BE PAID ONE–HALF BY APPELLANTS AND ONE–HALF BY APPELLEE.

10. The dictum in *Resetar v. State Bd. of Education,* 284 Md. 537, 556, 399 A.2d 225, 235 (1979), suggesting that "the State Board does not have the power to decide purely legal issues" is no obstacle to our disposition of this matter. The Board's limitation in this area has been more accurately described as an inability to *"finally* decide purely legal questions...." *Zeitschel v. Board of Education,* 274 Md. 69, 81, 332 A.2d 906, 913 (1975); *Halsey v. Board of Education,* 273 Md. 566, 572, 331 A.2d 306, 309 (1975) [emphasis added]. *See also McIntyre v. Bd. of Educ., Kent Co.,* 55 Md.App. 219, 225 n. 5, 461 A.2d 63, 66 n. 1 (1983). What is more, as has been stated, this case does not deal solely with purely legal questions but also with matters of educational and administrative policy.