REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 404

September Term, 2016

_____

MONARCH ACADEMY BALTIMORE
CAMPUS, INC., ET AL.

v.

BALTIMORE CITY BOARD OF SCHOOL
COMMISSIONERS
_____

Graeff,
Berger,
Shaw Geter,

JJ.
_____

Opinion by Graeff, J.
_____

Filed:  February 2, 2017

This appeal arises from complaints filed in the Circuit Court for Baltimore City by appellants, charter schools in Baltimore City (the "Charter Schools"), against the Baltimore City Board of School Commissioners (the "City Board"), appellee.[1] The complaints alleged a breach of contract by appellee in failing to provide funding to the charter schools that was commensurate with the amount disbursed to other public schools and in failing to provide budget and financial information. After counterclaims were filed, the circuit court issued an order that stayed the proceedings in the circuit court "pending administrative review of the parties' dispute by the State Board of Education" (the "State Board").

On appeal, the Charter Schools present a single question for our review, which we have rephrased, as follows:

> Did the circuit court err in staying the proceedings pending administrative review on the ground that the State Board has primary jurisdiction over the issues raised in the complaint?

For the reasons set forth below, we conclude that the circuit court's order is not an appealable order, and therefore, we shall dismiss this appeal.

---

[1] Appellants are operators of the following Baltimore City charter schools: Afya Baltimore, Inc., Baltimore International Academy Inc., Baltimore Montessori, Inc., City Neighbors Charter School, Inc., City Neighbors Hamilton, Inc., City Neighbors High School, Inc., Creative City Public Charter School Foundation, Inc., Empowerment Center, Inc., Experiential Environmental Education, Inc., Kipp Baltimore, Inc., Patterson Park Public Charter School, Inc., Southwest Baltimore Charter School, Inc., and Monarch Academy Baltimore Campus, Inc. Appellants have provided in the record extract one complaint, as a representative complaint, stating that "identical versions were filed in various actions that were subsequently consolidated." Appellees have not disputed this representation.

## BACKGROUND

A decision to dismiss an appeal typically will not require a detailed discussion of background facts and law. In this case, however, the nature of the issues presented to the circuit court, including the connection between the authority of the State Board with respect to school budgets and the issues presented in the Charter Schools' breach of contract claim, requires some background discussion.

### State Board's Authority Over Public Schools

Maryland Code (2014) § 2-205 of the Education Article ("ED") sets forth the "broad" and "comprehensive" authority of the State Board. *See Bd. of Educ. for Dorchester County v. Hubbard*, 305 Md. 774, 787-88 (1986). It "exercise[s] general control and supervision over the public schools and educational interests in this State," ED § 2-205(g)(2), determines the "educational policies of this State," ED § 2-205(b), and it "shall decide all controversies and disputes under" the Education Article. ED § 2-205(e)(2).

The Court of Appeals has stated that ED § 2-205 provides the State Board with "visitatorial power of such comprehensive character as to invest the State Board 'with the last word on any matter concerning educational policy or the administration of the system of public education.'" *Hubbard*, 305 Md. at 788 (quoting *Bd. of Educ. Of Prince George's County v. Waeldner*, 298 Md. 354, 360 (1984)). *Accord Baltimore City Bd. of Sch. Commr's v. City Neighbors Charter Sch.*, 400 Md. 324, 343 (2007) (State Board has the "paramount role" "in interpreting the public education law."). Although that visitatorial power is not unlimited, "'the paramount role of the State Board of Education in interpreting

2

the public education law sets it apart from most administrative agencies,'" *Patterson Park Pub. Charter Sch., Inc. v. Baltimore Teachers Union*, 399 Md. 174, 195 (2007) (quoting *Hubbard*, 305 Md. at 790-91), and "'decisions of the State Board of Education are entitled to greater deference than those of most other administrative agencies.'" *Id.* at 197.

**Charter School Funding**

Charter schools have been described as "semi-autonomous public schools that operate under a contract with a State or local school board." *City Neighbors*, 400 Md. at 328. "The contract, or charter, defines how the school will be structured, staffed, managed, and funded, what programs will be offered, and how the school will operate and account for its activities." *Id.*

In 2003, the General Assembly created the Maryland Public Charter School Program by enacting Title 9 to the Education Article. *Id.* at 329. The purpose of the charter school system is to "establish an alternative means within the existing public school system in order to provide innovative learning opportunities and creative educational approaches to improve the education of students." ED § 9-101(b). Because charter schools are public schools, they generally are subject to the "provisions of law and regulation governing other public schools." ED § 9-102(11).

The General Assembly, in "trying to fashion a formula for public funding" for charter schools, opted not to set a "specific formula," but rather, it determined that funding for charter schools should be in an amount "commensurate" with the amount disbursed to other public schools. *City Neighbors*, 400 Md. at 354-55. Accordingly, the statute provides:

3

A county board shall disburse to a public charter school an amount of county, State, and federal money for elementary, middle, and secondary students that is commensurate with the amount disbursed to other public schools in the local jurisdiction.

ED § 9-109(a).

The Court of Appeals has explained that this funding provision "necessarily left some room for interpretation – what was commensurate and how was the amount disbursed to other public schools to be determined when no amounts were actually disbursed to public schools?" *City Neighbors*, 400 Md. at 355. The Court stated that, by providing for funding in this manner, the legislature "must have envisioned that" the State Board, "the body it has consistently vested with the ultimate administrative authority to interpret, explain, and apply the public education laws – would have the primary authority to interpret, and the ultimate authority to implement, that provision." *Id.*

**Commensurate Funding Cases**

In May 2005, the State Board issued opinions addressing several charter school funding cases. *Id.* at 335-36.[2] The State Board concluded that the phrase "commensurate with the amount disbursed to other public schools in the local jurisdiction" meant that a public charter school would receive funding in an "amount proportionate to the amount of funds expended for elementary, middle, and secondary level students in the other public schools in the same system." *Id.* at 336. That included "funding for services for which

---

[2] The schools involved were City Neighbors Charter School and Patterson Park Public Charter School, Inc., Baltimore City schools who are appellants in this appeal, as well as Lincoln Public Charter School, Inc., a Prince George's County school. *City Neighbors*, 400 Md. at 331.

4

students in the public charter schools are eligible such as free and reduced price meals, pre-kindergarten, special education, English language learners, Perkins, Title I, and transportation." *Id.*

Noting that there was "no statewide formula or methodology for determining how local school systems fund their schools," the State Board decided on an "average per-pupil amount," which is then multiplied by the student enrollment of the school. *Id.* at 336-37. The formula to determine the average per-pupil amount was the "[t]otal annual school system operating budget," excluding debt service and adult education, divided by the "September 30 enrollment count for the previous year." *Id.* at 337 & n.5. This amount was then reduced by 2% for reasonable administrative costs of performing school system central office functions. *Id.* at 337.[3] The Court determined that the Board's use of an average per pupil funding approach "had the virtues of both simplicity and flexibility," given that, at that time, there was not an enrollment history at the schools "upon which to base a more refined enrollment-driven allocation of funds." *Id.* at 355-56. Once that type of history existed, however, the Board could revisit the issue. *Id.* at 356.

The Board again addressed charter school funding in *Monocacy Montessori Communities, Inc. v. Frederick County Board of Education*, MSBE Op. No. 06-17, p. 3

---

[3] In *Baltimore City Bd. of School Comm'rs v. City Neighbors Charter School*, 400 Md. 324, 338 (2007), the Court of Appeals explained the 2% deduction, as follows:

> Recognizing that there were certain support functions, such as data collection and the development of public charter school policies, that could be performed only by the central office of the local school system, [the State Board] directed that the total average per pupil amount be reduced by 2% as a reasonable cost of performing those functions.

(May 24, 2006). As this Court explained in *Frederick Classical Charter School, Inc. v. Frederick County Board of Education*, 227 Md. App. 439, 446, *cert. granted*, 448 Md. 724 (2016), the Board in *Monocacy* determined that "a school system could use a different formula so long as it resulted in a 'bottom line amount of money'" that the Board could conclude amounted to the school system providing "proportionate/commensurate funds to the charter school."

More recently, in *Frederick Classical*, the Board again addressed funding issues relating to a charter school. This Court upheld the Board's determination that the charter school was not entitled to funding for transportation costs when, pursuant to its charter agreement, the school did not "participate in the public school transportation program," but rather, the families of the students provided transportation. *Id.* at 459. The Board determined that a charter school is not entitled to receive funds for services it does not provide, and if it did, it would receive "more than its share of commensurate county funds." *Id.* at 453.

**Proceedings in the Present Case**

In 2015, a number of Baltimore City's public charter schools filed breach of contract complaints against the City Board.[4] The complaints alleged that, for the 2015-2016 school year, there would be 34 charter schools in Baltimore City, "with a combined enrollment of approximately 13,724 students, or more than 15% of Baltimore City's public school enrollment." The Charter Schools asserted that the Charter School Agreement (the

---

[4] Appellants represent, and the record reflects, that the complaints were consolidated by the time the stay order that is the subject of this appeal was issued.

6

"Contract") that they entered into with the City Board, addressed, among other things, funding of the schools and the City Board's obligation to provide financial transparency in the funding process. Specifically, the Contract provided the following:

> 6.1 OPERATING FUNDS. The parties agree that Title 9[5] requires funding of the charter school that is commensurate with the amount disbursed to other public schools in the local jurisdiction, and that Commensurate Funding is integral to this contractual relationship and essential to the School Operator's ability to operate the School hereunder and that all funds provided by the School Board to the school are to be used solely for the benefit of the school and its students. Accordingly, during each school year during the Term, the School Board shall allocate Commensurate Funding to the School Operator for the following school year pursuant to Applicable Requirements. Any financial commitment on the part of the School System contained in this Agreement is subject to the annual appropriation by the School Board. The School Board's staff shall deliver to the School Operator a draft of the funding formula including the amount of the estimated per pupil allocation for the applicable school year (determined in accordance with the School Board's "approved funding formula" and Applicable Requirements) and will make a good faith effort to deliver these materials in no less than two weeks prior to the budget (distinct from the Budget of the School Operator covered in Section 6.2) submission deadline for the School, such deadline to be consistent with the deadline for all School System schools. The draft document will include: (i) the School System's budget and line item amounts necessary to calculate the per pupil allocation, and (ii) copies of any materials or documentation related thereto that is delivered to the School Board for public presentation. Additionally, the School Board agrees to make reasonable efforts to provide to the School Operator background information on the methodology and assumptions behind the calculations as soon as such materials are available.

(footnotes omitted).

The complaints asserted one count for breach of contract, averring that the City Board "is contractually obligated to provide [the Charter Schools] 'commensurate funding'

---

[5] The contract defines "Title 9" as "the Public Charter School Act of 2003, Title 9 of the Education Article of the Maryland Annotated Code ('Maryland Public Charter School Program')."

7

under the Contracts, but has failed to do so"; the City Board "is contractually obligated to provide [the Charter Schools] certain budget and financial information under the Contracts, but has failed to do so"; and the Charter Schools "ha[ve] sustained damages and will continue to sustain damages as a result of [the City Board's] breach of contract."

Specifically, the complaints alleged that the City Board never provided the Charter Schools with commensurate funding, and instead, "from year to year, arbitrarily presented charter school operators with take-it-or-leave-it charter school per pupil figures derived using varying (or no) calculation methodology, inflated estimates of overall System enrollment, and unsupported and dubious financial and budget figures." Further, the City Board "failed to apply the per pupil calculation methodology put forth by the [State Board] and affirmed by the Court of Appeals," and it not only failed to disclose the details of its calculations, but it "unilaterally changed their methodology in developing the amount to be disbursed to charter schools."

The City Board filed motions "to dismiss, or in the alternative, motion to stay," asserting, among other things, that the "gravamen" of the complaints, that the City Board had not provided "commensurate funding" for charter school students, was a matter that should be decided by the State Board, not the court, under the primary jurisdiction doctrine. Noting that it had filed, the same day as it filed the motions to dismiss, a petition for declaratory relief with the State Board, seeking a ruling that it had provided commensurate funding and properly applied the funding formula, the City Board asked that the complaints be dismissed pending a decision from the State Board. Alternatively, the City Board

8

proposed that the circuit court proceedings be stayed until the State Board, the body best equipped to hear those issues, had ruled on the administrative proceeding.

The Charter Schools opposed the City Board's motions, asserting that the circuit court, not the State Board, "has proper jurisdiction over this breach of contract action." They asserted that the relief being sought was "equitable and legal redress and monetary damages for [the City Board's] ongoing breach of its contractual obligations to pass through commensurate funding to [the Charter Schools] and its students in an open and transparent process," which is "not a dispute resolvable through administrative remedies." In any event, they argued, "the only remedy the . . . State Board . . . could provide – its own interpretation of [the City Board's] related statutory obligations," including the methodology applicable to funding of charter schools, had already been decided in *City Neighbors*. Thus, they asserted, to the extent the State Board "ever had 'primary jurisdiction' over its interpretation of [ED § 9-109] that jurisdiction has long been fully completed."

With respect to the alternative relief requested, the Charter Schools asserted that the City Board's motions to stay should be denied because its petition to the State Board was not asking the State Board to interpret the "true intent and meaning" of education law, but instead, it was requesting that the State Board "apply the education law, as already explained and interpreted, and incorporated into a contract, to a specific set of circumstances." Moreover, they asserted that, because the State Board was not required to issue a declaratory ruling, if the motions to stay were granted, appellants could "be left indefinitely without any result."

9

After a hearing on January 8, 2016, the circuit court issued a lengthy oral ruling from the bench. The court relied heavily on the *City Neighbors* opinion, stating that the following paragraph in the opinion was important:

> Finally, perhaps in light of the fact that it was already dealing with three charter schools and that there were several others in the pipeline and that it was issuing a declaratory ruling, the Board noted that its opinions should be used as "guidance and direction" to other charter school applicants and local school systems "for the refinement of the working relationships on behalf of the public school children throughout this [S]tate."

(quoting *City Neighbors*, 400 Md. at 339). The circuit court explained that this paragraph was important because it showed that the State Board understood that the methodology identified "should be used as guidance and direction" in future cases.

The court ultimately determined that *City Neighbors* "provided sufficient guidance" regarding the meaning of commensurate funding, including the "requisite factors to be considered, the data to be considered." Under these circumstances, it concluded that the court was "no longer obliged to punt the issue to the expertise of the administrative body," but rather, it was entitled "to decline to invoke primary jurisdiction." Accordingly, the court denied the motion to dismiss.

After the circuit court ruled, the State Board dismissed the City Board's petition, without prejudice. It noted that the circuit court had "asserted its jurisdiction" on the issue, and it did not serve the interests of conserving judicial (and quasi-judicial) resources to have parallel proceedings.[6]

---

[6] The State Board further stated that the petition for declaratory ruling failed to present any "concrete facts from which [it] could declare the law."

Subsequently, the City Board filed counterclaims against the Charter Schools. It stated that Baltimore City is the fourth largest school system in Maryland, serving 85,000 students in 186 schools and programs. Of those 186 schools, 34 are public charter schools, and approximately 16% of all students in public schools attend charter schools.

The counterclaim alleged that the City Board's goals for schools had to "be carried out with limited resources that must be spread across a diverse population of students with varying needs," and if "Charter Schools receive more than their legally required share, less money is available for students attending Traditional Public Schools." The City Board asserted that Charter Schools had received services that exceed "the 2% administrative cost included in the funding formula," and as a result, the Charter Schools had "received more funding than the Traditional Public Schools." Accordingly, because the parties disputed "which services provided by the District Office are appropriately included in 'Administrative Costs,'" the City Board sought a "declaratory judgment regarding which services provided by the District Office are appropriately included in the funding formula 2% line item for 'Administrative Costs.'" The City Board also sought damages for breach of contract by the Charter Schools and unjust enrichment.

On April 18, 2016, a hearing was held on the Charter Schools' motion to dismiss the counterclaims. At the hearing, the court questioned whether there was an administrative procedure pending, and it asked "what happened that causes you to rightfully be in my courtroom."[7] Counsel for the City Board responded:

---

[7] The judge was not the same judge that had ruled in January that the court would not invoke the doctrine of primary jurisdiction and dismiss the complaint.

I wish I was in front of you several months ago. I think in January we had a hearing on a motion to dismiss where we argued exactly what Your Honor is stating, the doctrine of primary jurisdiction that this case should be stayed in favor of the State Board . . . making a determination of these issues and our motion was denied.

After further discussion regarding the procedural history of the case, and after a brief recess, the court noted that the City Board "would like to make an oral motion at this time." Counsel for the City Board then moved to dismiss "on the basis that the appropriate tribunal or court or body to hear this matter is the State Board of Education." Citing *City Neighbors*, counsel stated that the "case law is very clear that that body should be the first one to take up matters such as the ones that have been raised by the Plaintiff here relating to intricate, detailed, and important issues of public policy relating to education and educational funding."

Counsel for the Charter Schools responded that the claim raised in the complaint was for breach of contract, and the resolution of such disputes are for the courts. Counsel asserted that the issue of commensurate funding had already been settled and affirmed by the courts, thus "satisfying the requirements of primary jurisdiction of letting the administrative agency have a crack at setting out the interpretation."

The court ultimately granted the Charter Schools' motion to dismiss the counterclaim seeking declaratory judgment, without prejudice. With respect to the other matters, however, it ruled that dismissal was not appropriate, and the action should be stayed "pending the matter be administratively reviewed before it comes to the [c]ircuit [c]ourt." The court entered a written order to that effect.

12

On May 5, 2016, the Charter Schools filed this appeal seeking review of the court's stay order.[8]

## DISCUSSION

The issue presented by the Charter Schools involves the exhaustion of administrative remedies. As the Court of Appeals has explained, when the General Assembly provides an administrative remedy and a judicial remedy to resolve a matter, the relationship between the remedies typically falls into one of three categories:

> "[T]he administrative remedy may be exclusive, thus precluding any resort to an alternative remedy. Under this scenario, there simply is no alternative cause of action for matters covered by the statutory administrative remedy.
>
> [T]he administrative remedy may be primary but not exclusive. In this situation, a claimant must invoke and exhaust the administrative remedy, and seek judicial review of an adverse administrative decision, before a court can properly adjudicate the merits of the alternative judicial remedy.
>
> [T]he administrative remedy and the alternative judicial remedy may be fully concurrent, with neither remedy being primary, and the plaintiff at his or her option may pursue the judicial remedy without the necessity of invoking and exhausting the administrative remedy."

*United Ins. Co. of Am. v. Maryland Ins. Admin.*, 450 Md. 1, 14-15 (2016) (quoting *Prince George's County. v. Ray's Used Cars*, 398 Md. 632, 644-45 (2007)). In the situation where there is no "specific statutory language indicating the type of administrative remedy, there

---

[8] The City Board subsequently filed a second petition with the State Board seeking a declaratory ruling that it had provided, and continued to provide, "cash and services to all of its charter schools . . . that amount to more than commensurate funding." It also requested that the State Board "raise the 2% cap" or "clarify that the 2% cap covers only a limited bundle of services." After the Charter Schools opposed the petition, noting this appeal, the State Board dismissed the second petition "because the case remains within the jurisdictional purview of the courts."

is a rebuttable presumption that an administrative remedy was intended to be primary," which means that "'a claimant cannot maintain the alternative judicial action without first invoking and exhausting the administrative remedy.'" *Id.* at 15 (quoting *Zappone v. Liberty Life Ins. Co.*, 349 Md. 45, 63 (1998)).

Primary jurisdiction applies "'where the claim is initially cognizable in the courts but raises issues or relates to subject matter falling within the special expertise of an administrative agency.'" *Luskin's Inc. v. Consumer Prot. Div.*, 338 Md. 188, 195 (1995) (quoting *Maryland-Nat'l Capital Park & Planning Comm'n v. Washington Nat'l Arena*, 282 Md. 588, 602 (1978)). In the situation where the administrative remedy is deemed to be primary, it generally "must be pursued and exhausted before a court exercises jurisdiction to decide the controversy." *Hubbard*, 305 Md. at 786. *Accord Arroyo v. Bd. of Educ. of Howard County*, 381 Md. 646, 658 (2004) (primary jurisdiction applies where resolution of issues, under a regulatory scheme, are "'placed within the special competence of an administrative body'") (quoting *United States v. Western Pacific R.R. Co.*, 352 U.S. 59, 64 (1956)).

The Court of Appeals has held that the State Board has "primary jurisdiction over all State educational provisions." *Patterson Park*, 399 Md. at 202. Given the "very nature of the administrative framework of the Education Article," the General Assembly "meant to grant primary jurisdiction to a board of education in questions involving controversies and disputes that arise under provisions" of the Education Article. *Arroyo*, 381 Md. at 663. *Accord Clinton v. Bd. of Educ. of Howard County*, 315 Md. 666, 675-78 (1989) (where a claim requires the interpretation and application of provisions of the Education Article, the

14

State Board has primary jurisdiction); *Hubbard*, 305 Md. at 788 (State Board had primary jurisdiction over question involving teacher collective bargaining given its visitatorial power to "decide all controversies and disputes" under the Education Article).[9]

As indicated, the circuit court determined that the State Board has primary jurisdiction over issues involved in the Charter Schools' breach of contract claim against the City Board, and therefore, it stayed the circuit court proceedings pending administrative review of the parties' dispute (the "Stay Order"). Although the Charter Schools argue that the court's ruling in this regard was erroneous because primary jurisdiction does not apply in this case, we must address first whether this case is properly before this Court, i.e., whether this Court has appellate jurisdiction over the case.

The parties do not seek a ruling on the issue whether the Stay Order is an appealable issue.[10] This Court, however, must address appellate jurisdiction "even if the parties have

---

[9] The State Board exercises that authority by adjudicating appeals from local boards and by adjudicating petitions for declaratory rulings. *Dorchester County v. Hubbard*, 305 Md. 774, 788-90 (1986). *See City Neighbors*, 400 Md. at 346 ("Declaratory rulings are thus a permissible mechanism by which [the State Board] may exercise its statutory authority to 'explain the true intent and meaning' of the public school laws and decide 'controversies and disputes' under those laws.").

[10] The City Board did file, prior to filing its brief, a motion to dismiss the appeal on the ground that the Stay Order was not an appealable order. This Court denied the motion, "with leave to seek that relief in Appellee's brief." The City Board did not, however, include a motion to dismiss in its brief or request a ruling on whether the Stay Order was an appealable order, and the issue was not raised during oral argument. After argument, this Court requested the parties to address whether the Stay Order was an appealable order. The City Board filed a memorandum stating its view that the Stay Order was not an appealable order, but asking the Court, "in the interest of judicial economy and jurisdictional clarity," to rule on the merits and hold that the State Board had primary jurisdiction over the dispute.

overlooked the issue or would prefer an immediate appellate determination." *FutureCare NorthPoint, LLC v. Peeler*, 229 Md. App. 108, 118 (2016). *See also Renaissance Centro Columbia, LLC v. Broida*, 421 Md. 474, 489 (2011) (court will consider issues of jurisdiction and exhaustion of an administrative remedy even though not raised by the parties). "'Where appellate jurisdiction is lacking, the appellate court will dismiss the appeal on its own motion.'" *Schuele v. Case Handyman and Remodeling Srvcs.*, 412 Md. 555, 565 (2010) (quoting *Gruber v. Gruber*, 369 Md. 540, 546 (2002)).

"In Maryland, appellate jurisdiction, except as constitutionally created, is statutorily granted." *Id.* As this Court recently explained: "Except in a case involving one of the narrow exceptions under [Md. Code (2013)] § 12-303 [of the Courts & Judicial Proceedings Article], the collateral order doctrine, or Rule 2-602(b), a party may appeal only from a final judgment on the merits." *FutureCare*, 229 Md. App. at 118. We will address first whether the Stay Order is a final judgment, and then we will address the Charter School's claim that the order is appealable pursuant to the collateral order doctrine.[11]

"[T]o constitute a final judgment, a trial court's ruling 'must either decide and conclude the rights of the parties involved or deny a party the means to prosecute or defend rights and interests in the subject matter of the proceeding.'" *Md. Bd. of Physicians v. Geier*, ___ Md. ___, No. 11, Sept. Term, 2016, slip op. at 15 (filed Jan. 23, 2017) (quoting *Schuele*, 412 Md. at 565). Here, the Stay Order did not conclude the rights of the parties

---

[11] The other two exceptions are not applicable here, and the Charter Schools do not argue to the contrary.

or adjudicate all of the claims in the action. Thus, the issue is whether the Stay Order denied the Charter Schools the ability to litigate its breach of contract claim and resulted in the Charter Schools being put effectively out of court. *See Schuele*, 412 Md. at 571 (an order compelling arbitration of a controversy is appealable as a final judgment because it "'has the effect of putting the parties out of court'") (quoting *Town of Chesapeake Beach v. Pessoa Constr. Co.*, 330 Md. 744, 750-53 (1993)).

Here, City Board argues that the Stay Order did not have the effect of putting the Charter Schools out of court because it merely "directed that the parties first go to the State Board," which is "a jurisdictional issue regarding which body should hear threshold issues in the case in the first instance." We agree. Once the State Board makes a determination on the commensurate funding issues presented, the breach of contract case can return to the circuit court and proceed on the merits. The Stay Order effectively operates as a postponement of trial, not as an order resulting in the Charter Schools being put effectively out of court.

Other courts have reached a similar conclusion. For example, in *Crystal Clear Commc'ns, Inc. v. SW Bell Tel. Co.*, 415 F.3d 1171, 1173 (10th Cir. 2005), a federal trial court issued an order similar to the one here, staying a lawsuit filed by several payphone providers against Southwestern Bell Telephone Company, pending the resolution of certain issues by federal and state agencies. The United States Court of Appeals for the Tenth Circuit noted that, although a decision to stay litigation ordinarily does not constitute a final judgment, there is an exception for a stay order that puts a party "effectively out of court." *Id.* at 1175 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460

17

U.S. 1, 10 n.11 (1983)).  The Court held, however, that the order in that case, staying the proceedings in court pending resolution of certain issues by the agencies pursuant to the primary jurisdiction doctrine, with contemplation of return to court, was not a final decision.  *Id.* at 1176-78.

That is not to say that a stay order pending administrative review can never qualify as a final judgment.  In *Occidental Chem. Corp. v. Louisiana Pub. Serv. Comm'n*, 810 F.3d 299, 305, 307 (5th Cir. 2016), the United States Court of Appeals for the Fifth Circuit addressed whether an order by a federal court indefinitely staying proceedings to allow the Federal Energy Regulatory Commission to act on an administrative complaint was a final judgment when the court retained jurisdiction for a later determination on the merits.  The Fifth Circuit held that the order *in that case* "functioned as a final decision" because it resulted in Occidental being "effectively out of court" for a protracted and indefinite period, and therefore, the order was appealable.

Here, there is no indication that the State Board will delay in deciding the commensurate funding issue.  Although the State Board declined to weigh in on the issue while the matter was simultaneously being pursued in court, that reasoning no longer is applicable.  Because there is no indication that there will be a substantial delay in obtaining an administrative ruling, if there is a proper request, the Stay Order does not place the Charter Schools "effectively out of court."[12]  The Stay Order merely postpones resolution

---

[12] As the Charter Schools acknowledge, they can file a "petition for declaratory ruling by the State Board on the interpretation of a public school law or regulation of the State Board that is material to an existing case or controversy."  Code (continued . . .)

18

of the contract case pending guidance from the State Board on the commensurate funding issues. Under these circumstances, the Stay Order is not a final judgment.

We thus turn to the Charter School's argument that the Stay Order is appealable under the collateral order doctrine. This doctrine is "'based upon a judicially created fiction, under which certain interlocutory orders are considered to be final judgments, even though such orders clearly are *not* final judgments.'" *Geier*, slip op. at 16 (quoting *Dawkins v. Balt. City Police Dep't*, 376 Md. 53, 64 (2003)). Application of the doctrine "'is very limited'" *Schuele*, 412 Md. at 572 (quoting *Walker v. State*, 392 Md. 1, 15 (2006)), and it "should be applied sparingly in only the most extraordinary circumstances." *Id.*

To be appealed under the collateral order doctrine, an order must meet the following four requirements: "'(1) conclusively determines the disputed question, (2) resolves an important issue, (3) resolves an issue that is completely separate from the merits of the action, *and* (4) would be effectively unreviewable if the appeal had to await the entry of a final judgment.'" *Id.* (quoting *Walker*, 392 Md. at 15). These requirements are "strictly applied." *Dawkins*, 376 Md. at 59.

The Charter Schools contend that the Stay Order meets each of the four requirements. We disagree.

Initially, the Stay Order does not meet the third requirement, that it resolve an issue separate from the merits of the action. Indeed, other courts have found that "the issues involved in a determination of primary jurisdiction are 'inextricably bound up' with a

_____

(. . . continued) of Maryland Regulations 13A.01.05.02(D). The issue in this case, the interpretation of "commensurate" funding, appears to be encompassed by this provision.

determination of the merits" of a case. *Crystal Clear*, 415 F.3d at 1179-80 (quoting

*Richman Bros. Records, Inc. v. U.S. Sprint Commc'ns Co.*, 953 F.2d 1431, 1447 (1991)).

As the court in *Crystal Clear* explained:

> The entire purpose of the primary jurisdiction doctrine is to allow agencies to render opinions on issues underlying and related to the cause of action. *See United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63-64 (1956). Moreover, in order to determine whether the doctrine of primary jurisdiction was implicated in this case, the district court was required to give preliminary consideration to plaintiffs' claims to determine the extent to which they fell under the jurisdiction of the FCC and OCC. *See Delta Traffic Serv., Inc. v. Occidental Chem. Corp.*, 846 F.2d 911, 914 (3d Cir.1988) ("Only after [the district court] had ascertained the nature of the claim and related defenses could it know whether it needed to request the expert and specialized knowledge of the [agency] as a preliminary step in the resolution of this matter." (quotation omitted)). In particular, the district court's decision whether to invoke primary jurisdiction required it to consider whether the issues of fact in the case: (1) are not within the conventional experience of judges; (2) require the exercise of administrative discretion; or (3) require uniformity and consistency in the regulation of the business entrusted to a particular agency. *See Marshall v. El Paso Natural Gas Co.*, 874 F.2d 1373, 1377 (10th Cir.1989). These issues are all highly dependent on the specific allegations in plaintiffs' complaint and required the district court to examine factual and legal issues underlying the dispute. The parties' briefs on appeal, filled with detailed factual and legal arguments regarding plaintiffs' claims, further underscore the impropriety of reviewing the district court's stay order prior to final judgment.

*Id.* at 1179 (parallel citations omitted). *Accord Beach TV Cable Co. v. Comcast of*

*Florida/Georgia, LLC*, 808 F.3d 1284, 1292 (11th Cir. 2015) (order staying action pending

resolution of issue by an administrative agency, pursuant to the primary jurisdiction

doctrine, is not appealable under the collateral order doctrine because "decision whether to

refer a case for administrative action was sufficiently bound up with the merits").

20

We agree with this reasoning. A trial court's determination whether the primary jurisdiction doctrine is applicable "is not sufficiently separable from the cause of action" to be appealable under the collateral order doctrine. *Id.* at 1291.[13]

The Charter Schools contend, however, that *Crystal Clear* "runs counter to established Maryland law" and "cannot constitute even persuasive authority." We disagree.

*County Comm'rs of Frederick County v. Schrodel*, 320 Md. 202 (1990), upon which the Charter Schools rely, is distinguishable. In that case, Frederick County brought an eminent domain action to acquire property for use as a landfill. *Id.* at 204. The circuit court granted the Schrodels' motion for a postponement of the condemnation trial on the merits, enjoining the condemnation action until the County obtained a Maryland Department of the Environment permit to construct a landfill on the property. *Id.* at 210-12.

The Court of Appeals concluded that the order was an appealable interlocutory order under the collateral order doctrine because the order "ha[d] the effect of blocking the County from prosecuting its condemnation action against the Schrodels unless and until it obtain[ed] a state permit to construct the landfill on the property," thereby satisfying "all

---

[13] Although our analysis could end at this point, we further note that the Stay Order does not meet the fourth requirement, that it be "effectively unreviewable" on appeal. This requirement is met in "'very few [and] extraordinary situations. Otherwise, . . . there would be a proliferation of appeals under the collateral order doctrine.'" *Stephens v. State*, 420 Md. 495, 505 (2011) (quoting *In re: Foley*, 373 Md. 627, 636 (2003)). Here, after the State Board has determined the commensurate funding issue, and the stay is lifted and the breach of contract suit is resolved, the Charter Schools can challenge the circuit court's ruling on appeal.

four requirements of the collateral order doctrine." *Id.* at 212. First, the Court noted that the order "conclusively determined that the County must wait until it receives a permit from the Maryland Department of the Environment before it can go to trial with its condemnation case." *Id.* Second, "the issue of whether a court can lawfully impose such a condition on the government's power to acquire property by condemnation is clearly important." *Id.* Third, "the question of whether the County can be required to obtain the permit before having a trial is obviously distinct from the trial itself." *Id.* And fourth, the Court stated that, "if not appealable until the trial's conclusion, the claim that the County's right to condemn cannot be conditioned on first obtaining all necessary permits would irretrievably be lost," as the "government already will have had to comply with a possibly unlawful condition." *Id.*

The Court noted that a stay order ordinarily is not appealable. *Id.* at 213. In holding, however, that the interlocutory order in that case was appealable, the Court noted the unique circumstances of that case, stating:

> The circuit court granted no ordinary postponement of the trial. Not only is the length at least eighteen months, but it is certain that there will never be a trial if the County fails to obtain the permit. The order in this case assures that if the County does get the permit, only then can it prepare the property as a landfill. An important government prerogative has been delayed or defeated because of an allegedly unlawful condition. The vast majority of postponement orders, in contrast, merely require a party to wait longer for trial.

*Id.* at 214. The Court emphasized "that this is a case where 'our holding concerning appealability goes no further than the circumstances presented in this case.'" *Id.* (quoting *Public Service Comm'n v. Patuxent Valley*, 300 Md. 200, 210 (1984)).

22

This case is very different from *Schrodel*.  Initially, as previously explained, unlike the issue of whether a permit is required before prosecuting a condemnation action, the issue of primary jurisdiction is "bound up" with the merits of the action.  Thus, although the third requirement of the collateral order doctrine was satisfied in *Schrodel*, it is not satisfied in this case.  Moreover, the Stay Order here, unlike the order in *Schrodel*, is more akin to a mere postponement of trial.  Once the State Board makes a determination on the commensurate funding issue, a determination entrusted to the State Board, Charter Schools can return to the circuit court and proceed on the merits of its breach of contract claim.  The Stay Order here is not appealable under the collateral order doctrine.

Accordingly, because the Stay Order is not a final judgment, and it is not appealable under the collateral order doctrine, we must dismiss the appeal.

**APPEAL DISMISSED.  COSTS TO BE PAID BY APPELLANTS.**

23